**Robert S. SCHNEIDER, Plaintiff,**

v.

**Elmer F. KELM, (formerly) Collector of Internal Revenue, St. Paul, Minnesota, Defendant.**

**Adolph SCHEIN, Plaintiff,**

v.

**Elmer F. KELM, (formerly) Collector of Internal Revenue, St. Paul, Minnesota, Defendant.**

**Civ. Nos. 4739, 4740.**

United States District Court
D. Minnesota, Fourth
Division.

Feb. 10, 1956.

Harry L. Altman, Minneapolis, Minn., for plaintiff.

Kurt Melchior, Washington, D. C., for defendant.

DEVITT, District Judge.

This is a "family partnership" case under the internal revenue laws. The plaintiffs, Robert Schneider and Adolph Schein, seek to recover federal income taxes paid by them for the years 1946 and 1947 to the defendant, former Collector of Internal Revenue, pursuant to deficiency assessments made against them by the Commissioner of Internal Revenue.

The question presented on the merits of the case is whether the Commissioner acted correctly in attributing to Schneider and Schein income earned in a dress manufacturing business which they operated, and which was reported to the government as income earned by their respective wives, Bertha Schneider and Jennie Schein.

The two wives held themselves out to the taxing authorities as, and maintain in this law suit that they were, income producing partners. The business involved operated under the name of Boulevard Frocks, and maintained its manufacturing facilities in the City of Minneapolis. Plaintiffs contend that their two wives contributed capital to the business, after having received that capital from plaintiffs as "gifts", and that the two wives also contributed substantially to the partnership operations by acting as advisors and consultants in the design of new dresses and by "shopping" the lines put out by other manufacturers for new ideas.

■ Partnerships, as such, are not subject to tax but must file an information return. Section 187, Internal Revenue Code (1939), 26 U.S.C.A. § 187.

■ A cardinal rule of income taxation is that income should be taxed to the person who earns it. Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981.

A key decision on the question here involved is Commissioner of Internal Revenue v. Culbertson, 1949, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, the principles of which have been followed in innumerable decisions, the latest of which in this circuit is Lannan v. Kelm, 1955, 221 F.2d 725. In Culbertson it is stated that [337 U.S. 733, 69 S.Ct.

1213]: "* * * he who presently earns the income through his own labor and skill and the utilization of his own capital [must] be taxed therefor * * *".

The issue is: Did the plaintiffs earn the disputed income or did their wives earn it?

I am satisfied that these two plaintiffs earned the income for the years in question, and that the Commissioner acted properly in assessing the tax against them. While it is true that Bertha Schneider and Jennie Schein signed a partnership agreement with their husbands, and while in matters of form many of the mechanics pertaining to the creation of a purported partnership were suitably undertaken, yet there was no genuine intent that the wives should either render services to the business or that they should contribute capital for the purpose of producing income for the business: nor did they do so.

A tax assessment must be made by the true, rather than by the formal, intent of the parties. The test is whether the income attributed to the taxpayers by the Commissioner was in fact earned by them, by their own labor, or through the productive application of capital which in fact they controlled. Conversely, despite the possibility that a "legally valid" partnership agreement may have been executed between the taxpayers and their "partners", income is to be attributed to the challenged "partners" only according to the true intent of the parties.

In such situations the partnership agreement itself is only an indication of the contribution of the family members to the production of earnings and the Court must regard it with "raised eyebrows", Dyer v. Commissioner, 2 Cir., 1955, 211 F.2d 500, 505, in seeing whether the taxpayers have met the burden upon them to overcome the presumption of a correct assessment.

Looking at the present situation in the light of these standards, the Court has no difficulty in finding that the alleged partnership was a sham for tax avoidance, and that the income of Boulevard Frocks was in fact earned entirely by Robert S. Schneider and Adolph Schein. It is true their wives received formal title by "gift" to one-half of the business' undivided assets. But at all pertinent times the business was in a position to pay off the wives out of United States government bonds or certificates of indebtedness, which were idle funds so far as the needs of the business were concerned. Moreover, the government showed that the earnings placed in the names of Mrs. Schneider and Mrs. Schein did not come in any substantial amount into their own separate domain. Rather, these funds went into joint bank accounts, in part especially established for the purpose, and were used to defray such things as household expenses—thereby relieving the husbands of obligations which had theretofore been theirs.

The plaintiffs and their wives testified to continuous service allegedly rendered by the women in comparative shopping, and in the creation or design of new dresses, but this testimony was met in head-on conflict by the testimony of designers and pattern makers who worked in the business during all of the time here pertinent. Their testimony was unequivocal that Mrs. Schein and Mrs. Schneider made absolutely no contributions in the manner urged, and in fact that neither of them was ever seen in the work rooms of the factory. The testimony of these designers and pattern makers, Mrs. Anderson, Mrs. Mikulak and Mrs. Hokanson, was clear, straightforward and unequivocal. Their relationship with plaintiffs and their wives had been agreeable. There was no reason for them to misstate the truth. The Court believed their testimony. In this connection it is necessary to state that the testimony of Adolph Schein and Jennie Schein was evasive, unnecessarily contentious, inconsistent and untrustworthy. The Court did not believe what they said.

In sum, the Court finds that here there was no bona fide attempt or effort on the part of the family members to engage as partners in the production of income, and accordingly concludes that the assessments were properly made, and that the plaintiffs are not entitled to recover.

There is one other facet to the case, which although not essential to decision, is worthy of comment.

When the controversy between the taxpayers and the tax officials as to the years here in suit first arose, a similar controversy between them for prior years was awaiting trial in the U. S. Tax Court. That case was settled by mutual concessions, and a stipulated judgment was then entered by the Tax Court. The taxpayers thereupon approached the Internal Revenue officers with whom they were dealing in respect to taxes for 1946 and 1947, and suggested disposition of the controversy for these years along the lines of the Tax Court settlement. Their offer was accepted, and by agreement the deficiencies now in suit were assessed against Schneider and Schein. These deficiencies were less than had been proposed by the examining officers, and in consideration of the settlement, Schneider and Schein each executed and filed with the Treasury Department, Forms 870, "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax," for 1946 and 1947. These forms contained, as special additions, the following inserts:

"The undersigned also agrees:

" *   *   *   *

"(2) Not to file or prosecute any claim for refund for income taxes for the years 1946 and 1947;

*   *   * "

Nevertheless, claims for refund were later filed, and their rejection led to the present suits. The claims were filed while the year 1947 was still open for further assessment of deficiencies as to both Schneider and Schein; however, for 1946 the statute of limitations in that respect had run.

■ The Collector takes the position than an equitable estoppel should bar these actions in view of the agreement set out above. He does not rely on the Forms 870 alone, and properly so. These forms facilitate administrative handling of agreed matters, but they do not themselves deprive either the Government or the taxpayer of any rights with respect to a contest on the merits, either by way of further assessment or via the claim-for-refund route. See Clark v. United States, 8 Cir., 1954, 211 F.2d 100, certiorari denied 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714; Hargis v. Godwin, 8 Cir., 1955, 221 F.2d 486. The defendant does claim, however, that the taxpayers represented that the controversy would be ended by a settlement in which both sides had made concessions, and the taxpayers should be held to their bargain. He urges application of the doctrine of equitable estoppel.

■ An equitable estoppel exists where one party makes a representation of fact, and the other party, relying on that representation, acts or omits intended action. Stearns Co. of Boston, Mass. v. United States, 1934, 291 U.S. 54, 54 S. Ct. 325, 78 L.Ed. 647; United States v. S. F. Scott & Sons, 1 Cir., 1934, 69 F.2d 728; Helvering v. Brooklyn City R. Co., 2 Cir., 1934, 72 F.2d 274; Mahoning Inv. Co. v. United States, 1933, 3 F.Supp. 622, 78 Ct.Cl. 231, certiorari denied 291 U.S. 675, 54 S.Ct. 526, 78 L.Ed. 1064.

■ The first party may not thereafter change its position to the second party's detriment. Where, however, the first party changes his position in time to allow the second party to modify his position to conform, no permanent damage has been done to the latter, and the estoppel is not effective. Therefore, in the circumstances of this case, the taxpayers should not be estopped from prosecuting their claims for 1947, even though these claims fail on the merits, for at the time of their filing the taxing authorities should have considered the "settlement" revoked and could have assessed the total deficiencies which had originally been contemplated. As to 1946, however, the bargain had become binding, for the Commissioner had al-

lowed the statute to run in his belief that the controversy as to that year had been closed. Therefore, merits of the controversy aside, plaintiffs should be estopped from prosecuting their action, in so far as it is based on their claims for refund for the year 1946. See Guggenheim v. United States, 1948, 77 F.Supp. 186, 111 Ct.Cl. 165, certiorari denied 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441.

It hardly needs stating that the Government suffers a detriment where, on a misrepresentation of a factual matter, such as whether a claim for refund will be filed or whether the parties intend to end their dispute, less tax is collected than could have been but for the misrepresentation. In these circumstances equity should prevent the taxpayers from seeking to revoke their bargain after the Government has become bound to its part therein. If this would not create an estoppel, we would have the anomaly that taxpayers, if successful, would still retain the fruit of their broken bargain.

Findings of fact, conclusions of law, judgment, and form of judgment will be entered accordingly.