ARTHUR V. DAVIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57897. Filed February 18, 1958.

*Paul G. Rodewald, Esq.*, and *George M. Heinitsh, Jr., Esq.*, for the petitioner.

*Albert J. O'Connor, Esq.*, and *Gerald Becker, Esq.*, for the respondent.

OPINION.

KERN, *Judge:* Three questions are presented by the instant case for our decision. All are questions of first impression. Two of them involve an interpretation of section 130, I. R. C. 1939. This we set out in the margin hereof, together with the pertinent parts of respondent's regulations dealing therewith.[2]

---

[2] SEC. 130. LIMITATION ON DEDUCTIONS ALLOWABLE TO INDIVIDUALS IN CERTAIN CASES.

(a) RECOMPUTATION OF NET INCOME.—If the deductions (other than taxes and interest) allowable to an individual (except for the provisions of this section) and attributable to a trade or business carried on by him for five consecutive taxable years have, in each of such years, exceeded by more than $50,000 the gross income derived from such trade or business, the net income of such individual for each of such years shall be recomputed. For the purpose of such recomputation in the case of any such taxable year, such deductions shall be allowed only to the extent of $50,000 plus the gross income attributable to such trade or business, except that the net operating loss deduction, to the extent attributable to such trade or business, shall not be allowed.

(b) REDETERMINATION OF TAX.—Upon the basis of the net income computed under the provisions of subsection (a) for each of the five consecutive taxable years specified in such subsection, the tax imposed by this chapter shall be redetermined for each such taxable year. If for any such taxable year assessment of a deficiency is prevented (except for the provisions of sections 3801 and 3807) by the operation of any law or rule of law (other than section 3761, relating to compromises) any increase in the tax previously determined for such taxable year shall be considered a deficiency for the purposes of this section. For the purposes of this section the term "tax previously determined" shall have the meaning assigned to such term by section 3801 (d).

(c) EXTENSION OF STATUTE OF LIMITATIONS.—Notwithstanding any law or rule of law (other than section 3761, relating to compromises), any amount determined as a deficiency under subsection (b), or which would be so determined if assessment were prevented in the manner described in subsection (b), with respect to any taxable year may be assessed as if on the date of the expiration of the time prescribed by law for the assessment of a deficiency for the fifth taxable year of the five consecutive taxable years specified in subsection (a), one year remained before the expiration of the period of limitation upon assessment for any such taxable year.

Regulations 111.

SEC. 29.130–1. LIMITATION ON DEDUCTIONS ALLOWABLE TO INDIVIDUALS IN CERTAIN CASES.—(a) *Recomputation of net income.—* * * *

If an individual carries on several trades or businesses, the deductions attributable to such trades or businesses, and the gross income derived from such trades or businesses, shall not be aggregated in determining whether the deductions (other than those for interest and taxes) exceed the gross income derived from such trades or businesses by more than $50,000 in any taxable year. Each trade or business shall be considered separately. The trade or business carried on by the individual must be the same in each of the five consecutive taxable years in which the deductions (other than those for interest and taxes) exceed the gross income derived from such trade or business by more than $50,000.

* * * * * * *

(o) *Assessment of tax.—*Any amount determined as a deficiency in the manner described in subsection (b) of this section in respect to any taxable year of the five consecutive

## Issue 1.

The first issue arises by reason of respondent's determination that petitioner's "agricultural activities [i. e., the activities of petitioner carried on by the proprietorships described in our findings] constitute one trade or business, and the losses * * * claimed to have been sustained in that business * * * are allowable only to the extent of $50,000, as provided by Section 130 of the Internal Revenue Code of 1939, as amended."

Both parties are in agreement that the crucial question under this issue is whether petitioner's agricultural activities carried on by him under the name of Brownsville Plantations and those carried on under the name of Three Bays Farm constituted one business or two several businesses. If they constitute two several businesses then, under respondent's own regulations, the deductions attributable to them "shall not be aggregated in determining whether the deductions * * * exceed the gross income derived from such trades or businesses by more than $50,000 in any taxable year." Section 130 is only applicable to the instant case if the deductions of Brownsville Plantations and Three Bays Farm are aggregated.

Counsel for both petitioner and respondent have filed herein voluminous, thorough, and extremely well written briefs, and it would be impractical and perhaps unfair to the parties to rephrase in our own language and compress into a necessarily short summary a complete résumé of all the arguments advanced on this issue. Accordingly we quote directly from the briefs, summaries prepared by the parties themselves of their respective positions on this issue. Respondent states his position as follows:

Farming activities which are the same or substantially similar in nature constitute a single trade or business even where conducted at more than one location. The term "business", as used in the Internal Revenue Code of 1939 and earlier Revenue Acts, means "line of business" and is somewhat interchangeable with the word "trade". Petitioner's farming activities, although variously located, were the same or substantially similar in nature. They consisted of diversified farming operations under similar climatic and soil conditions and involved many common farm products and other products which, though not produced at all locations, were interrelated with the common prod-

taxable years specified in subsection (a) may be assessed and collected as if on the date of the expiration of the period of limitation for the assessment of a deficiency for the fifth taxable year of such five consecutive taxable years, one year remained before the expiration of the period of limitation upon assessment for the taxable year in respect of which the deficiency is determined. If the taxable year is one in respect of which an assessment could be made without regard to section 130, the amount of the actual deficiency as defined in section 271 (whether it is greater than, equal to, or less than the deficiency determined under section 130 (b)) shall be assessed and collected. However, if the assessment of a deficiency for such taxable year would be prevented by any provision of law (e. g., the period of limitation upon the assessment of tax) except section 3761, relating to compromises, or by the operation of any rule of law (e. g., res judicata), then the excess of the tax recomputed as described in subsection (b) over the tax previously determined may be assessed and collected even though in fact there is no actual deficiency, as defined in section 271, in respect of the given taxable year.

ucts because of the diversified nature of the operation. Because of this, it is immaterial whether the operations were separately conducted. In any event, petitioner's farm activities were not separately conducted.

In a rebuttal memorandum he restates his position as follows:

Our principal position is, of course, that the "nature test" is controlling, that substance rather than form should control. Our alternative position (in case the Court rejects the nature test or decides that petitioner's various farms differ in their nature) is that two or more business ventures, though differing in nature, will still constitute a single trade or business, unless they are separately conducted for a *bona fide* business purpose. * * *

Petitioner's contention is outlined by him as follows:

Each of the four enterprises involved was a separate trade or business, and they may not be treated as a single trade or business for the purposes of section 130.

1. The statute and regulations show that the limitations on deductions prescribed by section 130 are to be applied separately to each trade or business conducted by a taxpayer.

2. The enterprises in question were in fact separately and independently conducted and were not materially interrelated.

3. Under the authorities each of these four enterprises was a separate trade or business.

Upon the proposition that Three Bays Farm and Brownsville Plantations were separately conducted and not materially interrelated, petitioner further summarizes his position as follows:

by reason of their very great geographical separation, their completely independent management and personnel, their separate origins and endings, the differences in their products, labor sources, markets, sources of supplies, and financial and economic problems, and their separate, unrelated and independent books of account, bank accounts, purchasing, selling, borrowing and dealings with outsiders, Brownsville Plantations and Three Bays Farm were separate, independent and unrelated enterprises having no connection whatever with each other except that both were owned by the petitioner. * * *

The legislative history of section 130 (sometimes referred to as the "hobby amendment" and sometimes as the "Marshall Field amendment") is not helpful in a consideration of the problem here presented. The ingenious attempts of the parties to draw pertinent analogies from other sections of the Revenue Code and from decided cases have only confirmed us in the view that this question is one of first impression.

Since it is a question of first impression, it is important that we confine our decision to the facts before us and not attempt in this Opinion to consider all of the hypothetical questions that might come to mind in a consideration of the problem of what constitutes a separate business.

Respondent recognizes, as his regulations require, that an individual may have several separate businesses. This necessarily implies that the common ownership of these businesses and the exercise with re-

gard thereto of the rights of ownership do not ipso facto convert them into one business. Respondent also recognizes, although reluctantly, that not all agricultural activities necessarily constitute a single business. We would assume that under ordinary circumstances of separate management and operation a man who raises potatoes in Maine, cotton in Albama, cattle in Texas, and timber in Oregon would be carrying on four different businesses, even though they would all be classified generically as agricultural activities. Respondent would contend, however, that a man raising potatoes on a farm in Maine and also raising potatoes on a farm in Idaho would be carrying on only one business regardless of the fact that the operations on each farm were conducted separately, and also that a man raising cotton on a farm in Alabama and cattle on a ranch in Texas was carrying on one business if there was a common management of the two farms.

Petitioner recognizes that the mere fact that two farms or agricultural activities are physically separated does not necessarily result in their operations constituting two businesses. He would concede that if one farm owned by a taxpayer were used for the running and pasture of hogs and another farm also owned by him were used for the production of feed for these hogs, the operation of both farms might be considered as one business even though they were physically separated and each farm had its own resident manager. In the supposed case there would be sufficient economic interrelation between the operation of the two farms to justify the conclusion that as a practical matter there was one business unit. Petitioner does contend, however, that under the facts of the instant case the geographical separation of the two agricultural activities is an important factor in considering whether as a practical matter they constituted one business unit.

In arguing that the petitioner's agricultural activities at Three Bays Farm and at Brownsville Plantations were substantially similar in nature, respondent contends that "[t]he climatic and soil conditions under which each was conducted were generally similar," both being "subtropical areas, with dry and rainy seasons," and that "[t]he general picture presented is that of two diversified farming operations" with inconsequential differences arising because in each of the two farming operations petitioner "put some emphasis on products which would sell in local markets."

Respondent bases his contention that the soil and climate of Three Bays Farm and Brownsville Plantations were substantially similar largely upon the fact that the nature of the crops raised on Three Bays Farm and Brownsville Plantations was substantially similar, pointing out that on both there were citrus trees and that tomatoes,

potatoes, and corn were grown on each. He recognizes that on Three Bays Farm petitioner raised bananas, avocados, and pineapples which were not grown on Brownsville Plantations, and on the latter he grew beans, broccoli, peas, and cabbage which were not grown on the former; and he further recognizes that cotton was raised only on Brownsville Plantations and livestock only on Three Bays Farm. However, respondent contends that the cotton crop at Brownsville, although representing 58 per cent of the sales of that agricultural activity, and the raising of livestock at Three Bays Farm, although supported by over one-third of the acreage used in that operation, were not so important as to prevent both enterprises from being classified as diversified farming operations generally similar in nature. We are not shown by the record the season of the year when the various row crops were planted and harvested by each of the two proprietorships.

While the climate (with regard to average temperature) may be generally similar at the locations of both proprietorships, we are unable to conclude that the soil and climate (including the amount and incidence of precipitation) of both were so substantially similar as to constitute an important factor persuasive of a finding that the two agricultural activities themselves were substantially similar.

Contrary to the views of the respondent, we are more impressed by the differences between the two agricultural enterprises here in question than by their points of similarity. It is true that both were on approximately the same degree of latitude, that upon both some citrus trees were planted, and that upon both tomatoes, potatoes, and corn were grown. However, there were more differences than similarities with regard to the so-called row crops raised on each, and, furthermore, there was an important difference with regard to the primary activity in each enterprise. At the Brownsville Plantations the primary activity was the raising of cotton. This was not raised as a part of a program for rotation of crops characteristic of a diversified farming operation, but constituted the principal crop throughout the taxable period. At Three Bays Farm we are persuaded by the record that the initial emphasis was placed upon a program calling for the raising of livestock and the development there of adequate pasturage and production of fodder. It appears from the employment there of agronomists who were specialists in tropical agriculture (a circumstance not existing in connection with the Brownsville Plantations), and from a decrease in the number of livestock and in acres devoted to pasture and the raising of fodder that the emphasis shifted from livestock to the experimental development of tropical fruits and vegetables. In our opinion the two proprietorships did not constitute substantially similar diversified farming activities.

With regard to the acquisition of materials and supplies, the marketing of products, and matters connected with transportation, labor, and financing, the operations were strikingly different. On the entire record we conclude that the agricultural activities carried on by petitioner at Three Bays Farm, and those carried on by him at Brownsville Plantations were not substantially similar.

Respondent further argues that even if we conclude that the two agricultural enterprises differed in nature they must still be considered as a single trade or business since they were not separately conducted for a bona fide business purpose. Respondent points to the common supervision of petitioner over both, the appearance of the assets of both on the books of Arvida, and the fact that books kept by petitioner for Three Bays Farm do not completely reflect the operations of that enterprise but must be read in connection with the books of Arvida.

We have no doubt in our conclusion that the two agricultural enterprises were conducted by petitioner as separate businesses and for very good business reasons. Of course, petitioner, as the owner of both, exercised over both the supervision and control which a prudent owner would be expected to exercise, but respondent himself recognizes that common ownership does not preclude the existence of several separate businesses. While technically incomplete, separate books were kept for both Three Bays Farm and Brownsville Plantations, which adequately reflected their operational results. Each had separate operational management and, in the practical operation of each, there was no connection with the other. This separateness of operations was called for by the circumstances. The two enterprises were located far distant from each other, they were in different countries with different conditions relating to finances, currency controls, labor, and marketing, and the agricultural problems themselves differed as between the two enterprises. Under the existing circumstances it is difficult to see how they could have been conducted as a unit. Certainly the fact that they were not so conducted cannot be ascribed to any lack of bona fides on the part of petitioner.

On the assumption, *arguendo*, that the tests laid down by respondent are controlling, we nevertheless conclude that the agricultural activities carried on by petitioner under the names of Three Bays Farm and of Brownsville Plantations constituted two separate businesses, and that their losses cannot be aggregated under section 130 of the Internal Revenue Code of 1939.

If we apply to this problem the test suggested by petitioner, that is, whether there is a practical economic interrelation between the two agricultural enterprises, it is obvious that we should arrive at the same result. While this test appears to have much to commend it, it is unnecessary for us to decide whether it or the tests suggested by re-

spondent should control our decision herein, since even assuming the pertinence of those suggested by respondent the facts of the instant case require a conclusion on this issue in favor of petitioner.

*Issue 2.*

This issue involves the refund claims submitted by petitioner for the years 1944 and 1945. In October 1949 respondent accepted petitioner's "OFFER OF WAIVER OF RESTRICTIONS ON ASSESSMENT AND COLLECTION OF DEFICIENCY IN TAX" (Form 870–TS (Modified)), in which petitioner agreed to deficiencies of $18,805.80 and $2,164.27 in 1944 and 1945, respectively. The agreed-upon deficiencies were thereafter paid. In December 1950 and January 1951 petitioner timely filed claims for refund for the years 1944, 1945, 1948, and 1949 on the ground that the 90 per cent limitation contained in section 12 (g) (later section 12 (c)),[3] had not been applied when the respective deficiencies for 1944 through 1949 had been calculated. In his deficiency notice respondent has taken this limitation into account in the recalculation of the deficiencies determined for 1948 and 1949, but has failed to do so in the recalculation of the deficiencies determined for 1944 and 1945. In his petition, petitioner has assigned as error this failure to apply the section 12 (g) limitation, and has asked this Court to determine overpayments of taxes for those years on account thereof.

The question for our decision under this issue is whether this Court has jurisdiction over the claims of overpayments made by petitioner for those years. Both parties agree that the period of limitation on assessment and collection of deficiencies in income tax, prescribed by section 275, has run for the years 1944 and 1945. Petitioner points out that subsections (b) and (c) of section 130 permit the determination of a deficiency which is otherwise barred by section 275. He argues that section 130 makes no provision for the jurisdiction of this Court over proceedings relating to determinations of deficiencies made thereunder, and necessarily assumes that such determinations shall be covered with regard to procedure and jurisdiction by sections 272 and 322, even though the statute of limitations contained in section 275 has run. Thus, petitioner argues that the determination of a deficiency involved in a section 130 proceeding should be considered, for jurisdictional and procedural purposes, the same as any other timely determination of a deficiency, and, consequently, section 322, including subsection (d) which gives this Court jurisdiction to determine the amount of any overpayment, is applicable herein.

Respondent, on the other hand, contends that section 130 (b) and (c) gives this Court jurisdiction only over the proposed deficiencies

---

[3] All section references are to the Internal Revenue Code of 1939, as amended.

arising out of section 130 (a). He argues that if the assessments of any deficiencies for the years in question are barred by the statute of limitations, the extension contained in section 130 (b) and (c) is limited to the section 130 (a) deficiency and the same limitation applies to claims of overpayment. In the alternative, respondent contends that the doctrine of equitable estoppel precludes our holding for petitioner on this issue. This alternative contention is discussed under Issue 3.

The parties have not called our attention to and we have been unable to discover any decided case dealing with this question. Nor do the committee reports shed any light on the subject. It is our opinion, however, that petitioner is correct.

Section 130 (b) and (c) provides that any deficiency determined to be due under section 130 (a) shall be assessed within 1 year after the expiration of the period for assessment of the fifth taxable year. The effect of section 130 (b) and (c) is to extend the statute of limitations on assessment of a deficiency computed under subsection (a). It does not provide for any special procedure. It does not purport of itself to grant jurisdiction to this Court or limit this Court's jurisdiction. Neither does it authorize respondent to send a notice of a deficiency determined thereunder. To determine jurisdictional and procedural questions relating to determinations of deficiencies, we must turn to supplements L and O, subchapter C, of chapter 1, I. R. C. 1939. The procedures to be followed by the respondent in determining a deficiency and the procedures to be followed by petitioner in invoking the jurisdiction of this Court are carefully set forth in sections 272 and 322. The notice of deficiency, which is the basis of this action, must be considered as having been "mailed to the taxpayer * * * under section 272 (a)." No other section of the Code could authorize such mailing. The only jurisdictional requirement necessary to fall within these sections is filing a timely petition after the receipt of a timely notice of the determination of deficiency. If Congress thought section 130 warranted separate procedures for assessment and review, it could have made provision for such procedures as was done in section 732 with respect to the excess profits tax. This Court's jurisdiction over refund claims and overpayments where a petition has been filed by the taxpayer is authorized by section 322. There is no exception stated for cases where the Court's jurisdiction is invoked in connection with a determination of deficiency made pursuant to section 130. The only pertinent requirements contained in section 322 are a timely petition to this Court based on a timely notice of deficiency under section 272, and a claim for refund timely filed by petitioner within the period prescribed by section 322 (d). In the instant proceeding these requirements have been met. The notice of deficiency was made timely by the extension of the statute

of limitations, contained in section 275, by section 130 (c). The petition was timely filed pursuant to section 272 (a) (1). The refund claim was filed within the period set forth in section 322 (d). Under these circumstances we believe petitioner is not barred from pursuing his refund claim. In view of the above statutory provisions, we hold that this Court has jurisdiction to determine the questions of overpayment herein raised.

*Issue 3.*

This issue deals with respondent's alternative contention under Issue 2, i. e., that if this Court has jurisdiction to determine the merits of the refund claims for the years 1944 and 1945 then petitioner is estopped from recovering under these claims through the operation of the doctrine of equitable estoppel. Respondent points out that petitioner stated that he would not file any refund claims when he made an offer of waiver on Form 870–TS.[4] Respondent argues that his acceptance of this offer of waiver was based at least partly on this statement and that he suffered a detriment by allowing the statute of limitations to run without assessing any further deficiency in reliance on the agreement contained in the Form 870–TS.

The parties are agreed that the execution of a Form 870–TS is not equivalent to the execution of a closing agreement and is not of itself binding upon the parties. See *Botany Worsted Mills* v. *United States*, 278 U. S. 282. Obviously respondent could not contend to the contrary since he has himself disregarded his "acceptance" of the "OFFER OF WAIVER OF RESTRICTIONS ON ASSESSMENT AND COLLECTION OF DEFICIENCY IN TAX" by determining the deficiencies for 1944 and 1945 here involved. Only by the application of the doctrine of estoppel may the petitioner be precluded from successfully contending here that overpayments be determined for these 2 years pursuant to his refund claims that the limitation provisions of section 12 (g) were improperly applied in arriving at the amounts of the agreed deficiencies for those years. The merits of this question were decided in *Merrill* v. *United States*, 105 F. Supp. 379, and respondent in effect concedes it as indicated by his computation of petitioner's income tax liability for the years 1948 and 1949 in accordance with the method requested by petitioner in his refund claims for 1944 and 1945.

The allegations of respondent's answer, which present this issue of estoppel, are simply to the effect that respondent's agent directed a letter to petitioner stating that assessments of additional income taxes for 1944 and 1945 seemed warranted; that petitioner "indicated his disagreement with several of the proposed adjustments contained therein"; that at a conference between the parties it was tentatively agreed that if respondent "would eliminate certain adjustments" and

---

[4] All references to the Form 870–TS refer to Form 870–TS (Modified). See the language quoted in our Findings of Fact.

petitioner would "abandon protestation of certain other adjustments" the case might be disposed of "on the basis of an agreed liability"; that thereafter an agreement was reached and Form 870–TS was executed; "[t]hat on June 30, 1950, the period expired within which the Commissioner could assess income taxes against the petitioner with respect to the taxable years 1944 and 1945"; and "[t]hat the petitioner should be held to be estopped to assert and prosecute the aforesaid claims for overpayment."

Among the elements necessary to the establishment of estoppel is a misrepresentation of fact on the part of the person sought to be estopped, a justified reliance upon that misrepresentation by the person to whom it is made, and a detriment sustained by the latter. We doubt that petitioner's undertaking in a document similar to Form 870–TS not to file or prosecute claims for refund, which was not legally binding on him and was known by respondent not to be an enforceable obligation, could be considered as a misrepresentation of fact upon which respondent could justifiably rely or did rely. We pass these elements, however, and address ourselves to the element of detriment on the part of respondent.

The detriment shown in this proceeding is merely the running of the statute of limitations with regard to possible additional deficiencies relating to the years 1944 and 1945. We are not informed as to what those deficiencies, if any, might have been. It is true that some concessions were made by respondent in arriving at the agreed deficiencies set forth in the Form 870–TS, but we may not assume that they were made improvidently or without full legal and factual justification. No indication is given that any recoupments with regard to the claims for overpayment are urged by respondent, although our decision on the second issue that we have jurisdiction over petitioner's claims for overpayment for 1944 and 1945 would necessarily result in our having jurisdiction over claims of recoupment even though relating to matters barred, so far as a determination of deficiency is concerned, by the statute of limitations.

Respondent relies on *Guggenheim* v. *United States*, 77 F. Supp. 186, certiorari denied 335 U. S. 908, and also points to the following cases indicating a similar result: *Baldwin* v. *Higgins*, not officially reported (S. D. N. Y., 1937; 19 A. F. T. R. 1341, 37–2 U. S. T. C. par. 9434), affirmed on other grounds 100 F. 2d 405; *Schneider* v. *Kelm*, 137 F. Supp. 871, affirmed on other grounds 237 F. 2d 721; *Girard* v. *Gill*, 142 F. Supp. 770, affirmed per curiam 243 F. 2d 166; and *Daugette* v. *Patterson*, —— F. Supp. —— (N. D. Ala., 1956), affd. 250 F. 2d 753 (C. A. 5, 1957).

These cases appear to be contrary, at least in reasoning and language, to the following cases cited to us by petitioner: *Joyce* v. *Gentsch*, 141 F. 2d 891; *Steiden Stores, Inc.* v. *Glenn*, 94 F. Supp. 712;

*Cuba Railroad Company* v. *United States*, 124 F. Supp. 182; and *John* v. *United States*, 138 F. Supp. 89.

We are not aware of any opinions of this Court directly concerned with the question here presented.

It may be pointed out that the cases relied upon by respondent differ factually from the instant case in that here the proceeding was precipitated by respondent's determination of a deficiency in disregard of his acceptance of Form 870–TS; and petitioner's claims of overpayment, although based on claims for refund filed before such determination, were asserted as part of a petition predicated on the notice of such determination. While this factual difference may be pertinent in a consideration of the general equities of the problem, we do not rest our conclusion upon it.

We also point out that actions brought in the Federal District Courts to recover taxes erroneously paid are equitable in function and governed by equitable principles. See *Stone* v. *White*, 301 U. S. 532. The jurisdiction of this tribunal is strictly statutory; it has no equitable jurisdiction. *C. D. Little*, 20 B. T. A. 1042.

We also point out that we do not consider *Guggenheim* v. *United States, supra*, distinguishable from *Joyce* v. *Gentsch, supra*, on account of the fact that the latter case was concerned with a waiver containing a clause expressly reserving the right to respondent to assess a further deficiency. Even without that clause, as in the instant case, the respondent would have such a right.

Upon the record here presented, we conclude that there is not a sufficient showing of detriment on the part of respondent as to justify a holding that the doctrine of equitable estoppel precludes petitioner from establishing his claims of overpayment relating to the years 1944 and 1945. It is clear that the respondent who has pleaded estoppel has the burden of demonstrating the existence of all the elements of estoppel, including detriment. *Helvering* v. *Brooklyn City R. Co.*, 72 F. 2d 274. In our opinion the detriment shown must be real and substantial. See 31 C. J. S. 275. It is not enough to show that in reliance on petitioner's statement of his unenforceable undertaking that he would not file or prosecute any claim for refund respondent permitted the period of limitations to run on possible hypothetical deficiencies characterized only in general language. He must show that as a result of his reliance upon petitioner's "statement" the period of limitations was permitted to run on specific items of additional tax which he in good faith considers to have been possible to collect as of the time of the execution of Form 870–TS, the barring of which by the statute of limitations will result in a real loss to the Treasury. Furthermore, it must be demonstrated that the claims for additional taxes (with regard to which he is barred from determining deficiencies) are either not available as recoupments or

setoffs to petitioner's claims for overpayment or are in amounts larger than petitioner's claims. See *Joyce* v. *Gentsch, supra; Cuba Railroad Company* v. *United States, supra.*

In the instant case the respondent, in spite of the execution of Form 870–TS, has determined deficiencies against petitioner for the years 1944 and 1945. The ground of the deficiencies, while not identical with, is in general subject matter similar to an adjustment considered and eliminated by him in connection with the execution of Form 870–TS, i. e., the application of section 130 to petitioner's claimed business losses. Petitioner's claims for refund and claims for overpayment herein relate to a matter never considered by the parties in connection with the negotiations leading to the execution of Form 870–TS, and are concededly correct. Petitioner does not here contest any adjustments made in his income tax liability for those years as a result of those negotiations. He stands by the adjustments he agreed to. Those adjustments have been made a part of the deficiency notice herein and are not put in issue by the petition, and are in no way connected with the claims for refund filed by petitioner.

Under these circumstances and in view of the lack of showing of any substantial detriment suffered by respondent, we are not inclined to stretch an equitable doctrine such as estoppel in such a way as to make a legally unenforceable document such as Form 870–TS so binding upon one party (the petitioner) as to preclude him from asserting a concededly correct claim of overpayment relating to a matter never considered in the negotiations leading to the execution of Form 870–TS in a proceeding precipitated by the issuance of a notice of deficiency by the other party (the respondent).

In view of our opinion upon the question of estoppel, it-is unnecessary for us to consider petitioner's contention that the execution of Form 870–TS was not effective in that the matters presented by his claims for refund were the results of an "important mistake in mathematical calculations."

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

PIERCE, *J.*, dissenting: I respectfully dissent from holdings of the majority as to the taxable years 1944 and 1945, which holdings are to the effect:

(1) That, upon the appeal of the petitioner from a notice that his 1944 and 1945 taxes were to be adjusted under section 130, this Court acquired jurisdiction to entirely redetermine the tax liabilities for said years, and to find that there are overpayments of tax—notwithstanding that the tax liabilities for said years had been "previously determined" by compromise; that adjustments under section 130 are au-

thorized to be made only with respect to particular loss items which had entered into the computation of "the tax previously determined"; and that the petitioner's claim to overpayments is based on other items wholly unrelated to the application of section 130.

(2) That the petitioner's claim to overpayments for said years is not barred by the statute of limitations, on the ground that the period of limitation provided by section 275 was extended by the provisions of section 130 (c).

(3) That petitioner's claim to overpayments should not be denied by application of equitable estoppel—notwithstanding that petitioner had in 1949 entered into a compromise settlement of all pending controversies respecting the years 1944 and 1945; that he had voluntarily paid the amounts of tax so agreed upon; that he had agreed the cases would be closed and no claim for refund would be prosecuted; and that, by reason of such compromise settlement, the period of limitation was allowed to expire, within which respondent could have assessed any deficiency in respect of the matters compromised.

I would have decided all the above issues, contrary to the holdings of the majority, solely on the basis of the stipulation of facts (paragraphs 11–24) and the pleadings, including petitioner's admissions in his reply to certain affirmative allegations in the respondent's answer. My reasons for this are summarized as follows:

## I. Re Jurisdiction.

The jurisdiction of this Court to redetermine deficiencies and find overpayments in respect to income taxes for the years 1944 and 1945, is conferred and limited by sections 272 and 322 (d) of the 1939 Code. Section 272 (a) authorizes the Commissioner to determine and give notice to any taxpayer of "a deficiency determined in respect of the tax imposed by this chapter [Chapter 1—Income Tax]"; and it also permits the taxpayer to file a petition with this Court for redetermination of such "deficiency." Section 272 (e) gives this Court jurisdiction to redetermine the correct amount of such "deficiency," even if the amount so redetermined is greater than the amount determined by the Commissioner, and also to determine whether any penalty, additional amount, or addition to the tax should be assessed, if timely claim therefor is asserted by the Commissioner. And section 322 (d) provides, in substance, that if this Court finds there is no "deficiency" and further finds that the taxpayer has made an overpayment of tax in respect of the year for which the Commissioner determined the "deficiency," it shall have jurisdiction to determine the amount of such overpayment.

It is particularly significant that the term "deficiency," as used in all of said sections which confer jurisdiction on this Court, is defined to mean the amount by which: (A) The tax *imposed by this chapter*

(Chapter 1—Income Tax)—that is to say, the correct liability as fixed by the provisions of the *statute*—exceeds (B) the amount of tax shown on the *taxpayer's return*, if any, plus any amounts assessed (or collected without assessment) as a deficiency, over the amount of any rebates made. Such a "deficiency"—which is measured on the one hand by reference to the correct statutory tax liability, and which is measured on the other hand by the amounts of tax shown on the return, after adjustment for certain assessments, collections, and rebates—is the type of deficiency which is referred to in the applicable Treasury regulations (Regs. 111, sec. 29.130–1 (*c*)), as an "actual deficiency as defined in section 271." It is only where the Commissioner has determined and given notice of such an "actual deficiency," that this Court is given jurisdiction under sections 272 and 322 (d) to redetermine the correct amount of the statutory liability and to find any overpayment of tax.

On the other hand, any increase in tax computed under section 130, which is therein authorized to be assessed for any year in respect of which other assessments are barred by the statute of limitations or otherwise (such as the years 1944 and 1945 here involved), is not an "actual deficiency as defined in section 271." Section 130 shows that such increase in tax is computed, not by adjusting all items of gross income and deductions (including such items as capital gains, charitable contributions, and salaries) which enter into the correct statutory liability, but, rather, by adjusting only particular losses attributable to a trade or business, which had previously been allowed in amounts of more than $50,000. Also, after such limited adjustment has been made, the increase in tax authorized to be assessed, under section 130, is measured not by reference to the correct statutory liability in respect of all items entering into the net income, but only by reference to "the tax previously determined" for the year involved.

Moreover, section 130 (b) does not designate such increase in tax to be an actual "deficiency," as defined in section 271; but, rather, it provides that such increase in tax "shall be considered" a deficiency "for the purposes of this section [section 130]." The applicable regulations (Regs. 111, sec. 29.130–1 (*c*)) state:

the excess of the tax recomputed as described in subsection (b) over the *tax previously determined* may be assessed and collected *even though in fact there is no actual deficiency, as defined in section 271*, in respect of the given taxable year. [Emphasis supplied.]

Thus the Commissioner is not authorized by section 130 to make any adjustment, except the limited adjustment specifically provided therein with regard to certain business losses; no provision is made for issuance of a statutory notice respecting such limited adjustment; and no provision is made that, when a limited adjustment has been

determined under section 130, this Court shall have jurisdiction to redetermine either the correct statutory liability or "the tax previously determined," or to find any overpayment of tax. The situation is otherwise where the section 130 adjustment is made for a taxable year in respect to which assessments are not barred by limitation and could be made "without regard to section 130" (such as petitioner's years 1946 through 1949 which were open on waiver extending to June 30, 1955); for in such situation, the adjustment of losses attributable to a trade or business may be made along with other adjustments, in determining any "actual deficiency as defined in section 271" (Regs. 111, sec. 29.130–1 (c)).

The notice of deficiency in the present case served a double purpose. Insofar as it pertained to the years 1946 through 1949 which were open under waiver of the statute of limitations, it gave notice of "actual deficiencies" determined by merging the section 130 adjustments with the other miscellaneous adjustments, in the manner above mentioned; but insofar as it pertained to the years 1944 and 1945, it gave notice of increases in tax which were based only on the limited adjustments authorized to be made under section 130. The parties have stipulated (paragraph 24) that "the other adjustments reflected and explained by the statutory notice of deficiency with respect to the petitioner's income and deductions for the taxable years 1944 and 1945 * * * represent those adjustments agreed to by the petitioner and the respondent [in the compromise settlement of 1949] * * *." The taxpayer's petition, on the other hand, shows that his claim to overpayments is based on an item respecting the computation of capital gains, which is an item wholly unrelated to the limited adjustments authorized to be made under section 130.

On the basis of all the foregoing, I would have held that this Court has no jurisdiction to entertain or allow petitioner's claim to overpayments for the years 1944 and 1945. Whether such jurisdiction should be given to this Court, or be left to other courts, is a matter of policy controlled by Congress.

## II. Re Statute of Limitations.

The majority of the Court held, near the end of that portion of its Opinion which is designated as Issue 2, that petitioner's claim to overpayments is not barred by limitation, because the statute of limitations contained in section 275 was extended by section 130 (c). I am unable to agree.

Section 275 provides a general period of limitation on assessment, which is "three years after the return was filed"; but this is expressly made subject to the exceptions contained in section 276. This latter section, so far as here material, provides:

SEC. 276.  SAME—EXCEPTIONS.

(b) WAIVER.—Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon.  The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

In the instant case, it has been stipulated (paragraph 20) that, "[o]n June 30, 1950, the period [as extended by waivers] expired within which the Commissioner could assess income taxes against the petitioner with respect to the taxable years 1944 and 1945, except to the extent that such taxes may be properly assessed under the provisions of section 130 of the Internal Revenue Code of 1939 if and to the extent that such section is applicable."

Section 130 contains no provision for extension of the period of limitation provided in section 275.  To the contrary, it recognizes that "any increase in the tax previously determined," which is therein authorized to be assessed, may be prevented "by the operation of any law or rule of law."  And it therefore provides, in subsection (c), for a special period of limitation for assessing such "increase."  Such special period is not measured from the date of the return for the year involved; but it is measured, rather, with respect to "the expiration of the time prescribed by law for the assessment of a deficiency for the fifth taxable year of the five consecutive taxable years specified in subsection (a)."

The applicable Treasury regulations (Regs. 111, sec. 130–1 (c)) likewise give recognition to the fact that the period of limitation for determining an "actual deficiency as defined in section 271" may have expired before the provisions of section 130 became applicable.  They therefore point out that assessment of increases in tax under section 130 may be made by two separate methods: One to be used in cases where "the taxable year is one in respect of which an assessment could be made without regard to section 130"; and the other to be used where the year is one (like the years 1944 and 1945 here involved) in respect of which an assessment for such year "would be prevented by any provision of law (e. g., the period of limitation upon the assessment of tax) * * *."

I would have held, on the basis of the foregoing (assuming that this Court does have jurisdiction to pass upon a claim for overpayment, based on an item wholly unrelated to the application of section 130), that any overpayment herein is barred by the statute of limitations provided in section 275; and that such statute of limitations was not extended by section 130 (c).

### III. Re Estoppel.

The majority of the Court, in that portion of the above Opinion designated as Issue 3, rejected the plea of the Commissioner that petitioner's claim to overpayments should be denied by application of equitable estoppel. The reasoning of the majority is that the compromise settlement agreement which the parties executed in 1949, on Form 870–TS (Modified), was not a formal closing agreement within the meaning of section 3760 (which I agree is true) ; and that equitable estoppel should not be applied, because the respondent has not established that he suffered any "detriment." The majority said:

> The detriment shown in this proceeding is merely the running of the statute of limitations with regard to possible additional deficiencies relating to the years 1944 and 1945. We are not informed as to what those deficiencies, if any, might have been. * * *

Several decisions of other courts are to the contrary. The case of *Guggenheim* v. *United States*, (Ct. Cl.) 77 F. Supp. 186, certiorari denied 335 U. S. 908, involved a situation almost identical to the present one. There the parties had executed a Form 870–TS settlement agreement, which contained covenants substantially the same as those contained in the agreement here involved; and, after the amounts of the taxes therein agreed upon had been paid and the statute of limitations had barred respondent from assessing any deficiency in respect of the settled issues, the taxpayer filed a claim for refund in violation of the agreement. The Court of Claims said, at page 196:

> At the time the agreement in this case was executed the statute had not run on the collection of further deficiencies, but when the claims for refund were filed the statute had run. It would obviously be inequitable to allow the plaintiff to renounce the agreement when the Commissioner cannot be placed in the same position he was when the agreement was executed. A clear case for the application of the doctrine of equitable estoppel exists and should be applied. * * *

The Court of Claims, in said case, also gave consideration to *Botany Worsted Mills* v. *United States*, 278 U. S. 282. In this case, the Supreme Court stated that formal closing agreements, such as those now provided for in section 3760 of the 1939 Code, provide the exclusive method for compromising tax controversies; but the Supreme Court further stated therein, that it was not determining whether an informal agreement "may when executed become, under some circumstances, binding on the parties by estoppel * * *."

Other cases in which estoppel was applied in situations similar to the present are *Baldwin* v. *Higgins*, not officially reported (S. D. N. Y., 1937; 19 A. F. T. R. 1341, 37–2 U. S. T. C. par. 9434) affirmed on other grounds (C. A. 2) 100 F. 2d 405; *Schneider* v. *Kelm*, (D. Minn.) 137 F. Supp. 871, affirmed on other grounds (C. A. 8) 237 F. 2d 721; *Girard* v. *Gill*, (N. D. N. C.) 142 F. Supp. 770, affirmed per

curiam (C. A. 4) 234 F. 2d 166; and *Daugette v. Patterson*, (C. A. 5) 250 F. 2d 753, affirming (N. D. Ala.) —— F. Supp. ——.

In the *Baldwin* case, *supra*, the District Court said:

The waiver and consent agreement * * * is a binding contract and it was accepted and acted upon by the Commissioner. * * *

Furthermore, it would seem unconscionable and inequitable to permit the plaintiff to sustain a recovery based on his own broken promises. * * *

In the *Schneider* case, *supra*, it was said, at page 876:

If this would not create an estoppel, we would have the anomaly that taxpayers, if successful, would still retain the fruit of their broken bargain.

And in the recent *Daugette* case, *supra*, the Court of Appeals for the Fifth Circuit not only applied the doctrine of estoppel, but also reviewed and distinguished most of the cases which have been relied upon by the majority of this Court, in its above Opinion.

It now is well settled, that equitable estoppel or estoppel *in pais* is applied by courts of law, as well as in equity. *Wehrman v. Conklin*, 155 U. S. 314, 327; 19 Am. Jur. 831; 3 Pomeroy, Equity Jurisprudence, p. 181 (5th ed.). Also, the doctrine of equitable estoppel has been applied frequently by this Court, and by Courts of Appeals on the review of decisions of this Court. See for example: *Aurore B. Benoit*, 25 T. C. 656, 668–669, and *Lucas v. Hunt*, (C. A. 5) 45 F. 2d 781. See also *Fairmont Aluminum Co.*, 22 T. C. 1377, affirmed (C. A. 4) 222 F. 2d 622, certiorari denied 350 U. S. 833, in which the doctrine of collateral estoppel was discussed and applied.

By reason of all the foregoing, I respectfully dissent.