261 F.2d 695
 Cy GIRARD, Sam R. Girard, Herbert A. Girard, as executors of the estate of Frank Goldberg, deceased, Appellants,
v.
Edwin GILL, formerly Collector of Internal Revenue, Appellee.
 No. 7746.
 United States Court of Appeals Fourth Circuit.
 Argued November 12, 1958.
 Decided December 15, 1958.
 
 1
 Maurice N. Maloof, Atlanta, Ga. (Morris B. Abram, Atlanta, Ga., on brief), for appellants.
 
 
 2
 J. Dwight Evans, Jr., Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., and James E. Holshouser, U. S. Atty., Boone, N. C., on brief), for appellee.
 
 
 3
 Before HAYNSWORTH, Circuit Judge, and BOREMAN and R. DORSEY WATKINS, District Judges.
 
 
 4
 R. DORSEY WATKINS, District Judge.
 
 
 5
 This is an appeal from a summary judgment for the defendant, former Collector of Internal Revenue (appellee), on an action by the plaintiffs, executors of the estate of Frank Goldberg (taxpayer) for the refund of Federal income taxes, interest and penalties in the amount of $313,015.88 for the period from January 1 to November 20, 1945, and for the year 1946. In 1949, appellee proposed additional assessments of net income for this period of slightly over $400,000. Almost the entire proposed additions related to the rental of mill properties (approximately $130,000) and alleged partnership profits (approximately $270,000), the latter on the theory that taxpayer in fact owned a 75 per cent interest in the partnership but had reported income on the basis of a 26 per cent interest. Protests, with respect to the proposed assessments, proposed assessments against the taxpayer for other years and against others associated with taxpayer by blood, marriage and business relationships ("related" taxpayers), were filed by Troy, an attorney and accountant with an accompanying letter on December 8, 1949. A series of conferences were held by Troy, and Runkle, a Technical Advisor with the Appellate Staff, Internal Revenue Service. On March 20, 1952, two agreements were executed on behalf of taxpayer on Treasury Form 870-TS, and other agreements on behalf of other taxpayers represented by Troy, and related taxpayers were also filed.[1] The forms 870-TS were accepted on behalf of the Commissioner on June 18, 1952. For the period in question taxpayer's liability was restated at approximately $275,000. The assessment thereon was paid July 22, 1952, partly by the crediting of overassessments against other related taxpayers.
 
 
 6
 A claim for refund on behalf of taxpayer was filed on June 23, 1954, after limitations had run upon the assessment and collection of further tax deficiencies against taxpayer and related taxpayers. This suit was filed March 8, 1955, at which time the Commissioner had not acted on the claim for refund. Appellee filed an affirmative defense, the first paragraph of which alleged that "concessions were made by the Internal Revenue Service in return for which plaintiffs submitted proposals on Treasury Department Forms 870-TS" which were accepted, and claims for refund were filed after the expiration of limitations for the assessment and collection of further tax deficiencies. Paragraph 2 of the affirmative defense alleged that in permitting the statute of limitations to expire without the assessment and collection of further deficiencies, the Commissioner relied upon[2] the statements in Form 870-TS [that no claims for refund would be made]; "that binding agreements were effected when the same were accepted"; and that by "virtue of the foregoing, plaintiffs are precluded from prosecuting this action." The second paragraph was later amended to allege that the Commissioner "relied upon the statements * * * to his detriment"; reference to the effecting of "binding agreements" by acceptance was omitted; it was alleged that plaintiffs "violated their representation that no claim for refund would be filed or prosecuted; and that they are estopped from prosecuting this action." Plaintiffs denied the allegations of paragraph 2 as amended. Defendant thereafter filed a motion for summary judgment, accompanied by an affidavit of Runkle. An affidavit and supplemental affidavit of Troy were filed, and a supplemental affidavit by Runkle.
 
 
 7
 The court entered summary judgment, finding various facts in accordance with the Runkle affidavits, and further finding that statements by Troy in his affidavits did not contradict "the essential facts in this case," except his denial of a "package settlement," which was contradictory of his letter of December 8, 1949, did "not raise a controversial issue," and "should be disregarded." The court disposed of Troy's charge of intimidation or bad faith on the part of the Government in making the assessments merely by stating that it was "significant that there is no intimation in the protest, nor in the allegations of the complaint" on this score. The court concluded as a matter of law that:
 
 
 8
 "The plaintiffs are estopped to maintain this action for the recovery of taxes against the defendant by virtue of the settlement which they obtained from the defendant under an agreement that the settlement in one case was to be regarded as final in all of the cases under consideration at that time, and in order to induce that settlement they promised not to sue. This promise is enforceable and they are now estopped from maintaining the action. Girard v. Gill [D.C.N.C.], 142 F. Supp. 770, aff'd, Cir. 4, 243 F.2d 166; Cain v. United States, 254 F.2d ___, [255 F.2d 193] dec'd, Cir. 8, April 29, 1958; Daugette v. Patterson, Cir. 5, 250 F.2d 753."
 
 
 9
 In its attached memorandum, the court referred to the previous litigation between the parties, Girard v. Gill, D.C. N.C.1956, 142 F.Supp. 770, affirmed, 4 Cir., 1957, 243 F.2d 166, concluding:
 
 
 10
 "These same plaintiffs were parties against the same defendant in the case first referred to above, and the same issues were involved, and on equitable principles should be denied the right to maintain this action on the doctrine of collateral estoppel."
 
 
 11
 Summary judgment, under Federal Rules of Civil Procedure 56(c), 28 U.S. C.A., can be granted only if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
 
 
 12
 This court has recently pointed out, in a case in which plaintiff relied upon on the doctrines of waiver, estoppel and election, that where the resolution of the legal questions so raised "appears dependent upon the liberality with which the pleadings are to be construed, and inferences drawn", summary judgment may be inappropriate. Nichols v. Cities Service Oil Company, 4 Cir., 1958, 256 F.2d 521, 522. Conflicts and ambiguities are not to be resolved on motions for summary judgment, Coe v. Riley, 5 Cir., 1947, 160 F.2d 538, 540, nor is the trial court to choose between conflicting inferences, Sarkes Tarzian, Inc. v. United States, 7 Cir., 1957, 240 F.2d 467, 470. The court should not attempt to determine questions of credibility, Johnson Farm Equipment Co. v. Cook, 8 Cir., 1956, 230 F.2d 119, 123; and all doubts as to the existence of a genuine issue as to a material fact should be resolved against the moving party, Sarnoff v. Ciaglia, 3 Cir., 1947, 165 F.2d 167, 168; Warner v. First National Bank of Minneapolis, 8 Cir., 1956, 236 F.2d 853, 857, certiorari denied, 1956, 352 U.S. 927, 77 S.Ct. 226, 1 L.Ed.2d 162. Against these principles the granting of summary judgment in this case must be tested.
 
 
 13
 Collateral Estoppel.
 
 
 14
 Substantial doubt exists if appellee is entitled to rely upon the defense of collateral estoppel. His original defense was in the nature of a contractual bar. His amended defense was clearly equitable estoppel — reliance by appellee to his detriment upon the undertakings on behalf of the taxpayer. Under Federal Rules of Civil Procedure 8(c), estoppel must be set forth affirmatively; and the burden of proof is on the party asserting it, Crosley Corporation v. United States, 6 Cir., 1956, 229 F.2d 376, 381; Callaway v. Hamilton National Bank of Washington, 1952, 90 U.S. App.D.C. 228, 195 F.2d 556, 562. However even if (which we do not decide) appellee could be held to have pleaded collateral estoppel, it would not permit, in this case, the entry of summary judgment. Apart from the fact that the defense of estoppel, however it may be characterized, was categorically traversed, it is clear that in the first suit (D.C., 142 F.Supp. 770) the ultimate question was the timeliness of the assessment of the tax for which refund was sought; there was no contention that the tax if levied in time was excessive or invalid. In the present case, the validity and amount of the tax were directly in issue; problems of the source of the alleged deficiency (right to receive rentals, and amount of partnership income), not raised in the prior case, were directly in issue; in the preceding case, the taxpayer offered no counter affidavits as to the nature of the preliminary negotiations (the so-called "package deal") while here such affidavits were filed; and, as the trial court found as a fact, the question of intimidation and bad faith on the part of the Government agents, raised in the Troy affidavits in this case "seems not to have been raised when the other case was tried and disposed of."
 
 
 15
 We therefore find no basis for invoking collateral estoppel against appellants.
 
 
 16
 Equitable Estoppel.
 
 
 17
 The appellee did not, either in brief or argument, take the position that the mere execution and acceptance of a Form 870-TS agreement, constituted a binding agreement. This effect was claimed in appellee's defense as originally filed, but in view of the decisions in Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 289, 49 S.Ct. 129, 73 L.Ed. 379; L. Loewy & Son v. Commissioner of Internal Revenue, 2 Cir., 1929, 31 F.2d 652, 654; Joyce v. Gentsch, 6 Cir., 1944, 141 F.2d 891, 894-895; Cuba Railroad Company v. United States, D.C.N.Y.1954, 124 F.Supp. 182, 184-185; Steiden Stores v. Glenn, D.C.Ky.1950, 94 F.Supp. 712, 720-721; John v. United States, D.C.Wis.1956, 138 F.Supp. 89, 93-94; Knapp-Monarch Company v. Commissioner of Internal Revenue, 8 Cir., 1944, 139 F.2d 863, 864; Brast v. Winding Gulf Colliery Company, 4 Cir., 1938, 94 F.2d 179, 181; Edmonds v. United States, D.C.Wis.1957, 148 F. Supp. 185, 186; Bank of New York v. United States, 3 Cir., 1948, 170 F.2d 20, 23-24; Cabin Creek Consolidated Coal Co. v. United States, 4 Cir., 1943, 137 F. 2d 948, 952; Hamil v. Fahs, D.C.Fla. 1955, 129 F.Supp. 837, 842; Herber v. Jones, D.C.Okl.1951, 103 F.Supp. 210, 214, affirmed without discussion of effect of Form 870-TS, 10 Cir., 1952, 198 F.2d 544; Davidson v. United States, D. C.Wis.1944, 58 F.Supp. 481, 483-484; Arthur V. Davis, 29 T.C. 878 (in which the Tax Court, referring to an accepted Form 870-TS, stated: "The parties are agreed that the execution of a Form 870-TS is not equivalent to the execution of a closing agreement and is not of itself binding upon the parties"), appellee was well advised to amend his special defense to allege reliance upon the execution and acceptance of Form 870-TS to the detriment of the Commissioner.
 
 
 18
 We are of course not here concerned with the ethics of suing for refund after stating such suit would not be filed, nor may we decide the propriety of summary judgment upon a forecast of outcome of the litigation. It may be that upon a trial on the merits it will be found that the Commissioner did rely upon the undertakings on behalf of the taxpayer to the detriment of the Commissioner or that in arriving at a determination to file the Form 870-TS in fact executed, a "settlement" was effected whether or not the party complaining "surrendered" rights that the law would have sustained, or whether there were "concessions" (Backus v. United States, 1932, 59 F.2d 242, 259, 75 Ct.Cl. 69, certiorari denied, 1933, 288 U.S. 610, 53 S.Ct. 402, 77 L.Ed. 984; Guggenheim v. United States, Ct.Cl. 1948, 77 F.Supp. 186, 111 Ct.Cl. 165, 195-196, certiorari denied, 1949, 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441, rehearing denied, 1949, 336 U.S. 911, 69 S.Ct. 513, 93 L.Ed. 1075); or that the United States cannot, under Sections 1311-1315 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 1311-1315 or otherwise, recoup or set-off any claimed deficiencies. (Compare majority opinions in Cain v. United States, 8 Cir., 1958, 255 F.2d 193, and Daugette v. Patterson, 5 Cir., 1958, 250 F.2d 753, certiorari denied, 1958, 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed.2d 580, with Arthur V. Davis, 29 T.C. 878).
 
 
 19
 In this case, appellee pleaded that the Commissioner had relied upon conduct on behalf of the taxpayer to the detriment of the Commissioner, and that the taxpayer was thereby estopped. These allegations were flatly denied by the taxpayer. Insofar as the allegations are conclusions of law, they are met by equally conclusive denials. Insofar as they are allegations of fact, they are traversed. Whether the Commissioner was entitled to rely upon the allegations of taxpayer was not dealt with in the case below.[3] Whether detriment was or will be sustained by the Commissioner is far from clear on the record. Runkle's affidavits purport to show that it was his "understanding and that of the appellate staff [of the Internal Revenue Service] * * * that the case at bar and the other cases referred to were all related and considered as a group on a single proposal for settlement * * *", that there were "concessions on both sides", and that there was "a so-called `package settlement'". Troy in his affidavits claimed that the only "concession" by the Government was an admission that it had been wrong in assessing the mill rentals to taxpayer; that the Government never "gave up anything to which it was entitled". Troy denied there was any "package settlement" because "each case was handled on an individual basis in that any so-called `concessions' made in any of the other cases by the Government were made on a `give and take' basis with respect to that individual case only, and in consideration of other concessions made by that particular taxpayer in that case, for the purpose of settling that case only." He further stated that he "never submitted any `single proposal for settlement' in the sense of an interrelated and conditional group settlement. No proposal or settlement of any taxpayer's liability was related or conditional on the acceptance of that of any other."
 
 
 20
 Troy also alleged in his affidavits that the Government knew that the mill rentals were not properly taxable to taxpayer but were "in bad faith, proposed" to be assessed against him "for the purpose of intimidating and frightening the taxpayer into making a settlement more favorable than that to which the Government was entitled * * *" This quite serious charge, which certainly bore upon the right of the Government to rely upon the Form 870-TS, was not answered by Runkle in his supplemental affidavit[4]. The trial court referred to this charge, but dismissed it with the comment that it had not been raised in the protest or complaint. But the necessity for asserting this matter was occasioned by the amended defense, raising the issue of detrimental reliance by the Commissioner, and consequent estoppel.
 
 
 21
 We hold on this record that genuine issues of material fact are raised by the pleadings and affidavits, on which taxpayer is entitled to a jury trial as prayed.
 
 
 22
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The claims of the parties as to the nature of the negotiations are briefly considered below under "Equitable Estoppel."
 
 
 [2]
 All emphasis supplied
 
 
 [3]
 Involving a consideration at least of the holding in Botany Worsted Mills and other cases, supra; the statement in the Form itself that "It is not, however, a final closing agreement under Section 3760 of the Internal Revenue Code, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax;" the further provision in the Form that taxpayer will "upon request of the Commissioner . . . execute at any time a final closing agreement as to the tax liability, on the foregoing basis, for said year(s) under the provisions of section 3760 of the Internal Revenue Code"; and the question as to the validity and amount of the tax actually due
 
 
 [4]
 He simply said, without reference to this particular contention, that he regarded the Government's position on the "issues * * * well founded."