**F. R. DAUGETTE, and F. R. Daugette and Mary E. Daugette, Appellants,**

v.

**George D. PATTERSON, District Director of Internal Revenue, for District of Alabama, Appellee.**

**No. 16485.**

United States Court of Appeals
Fifth Circuit.

Dec. 26, 1957.

Certiorari Denied March 10, 1958.

See 78 S.Ct. 561.

William S. Pritchard, Winston B. McCall, Birmingham, Ala., Pritchard, McCall & Jones, Birmingham, Ala., of counsel, for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., Sheldon I. Fink, Washington, D. C., W. L. Longshore, U. S. Atty., Birmingham, Ala., Robert N. Anderson, Attorney, Department of Justice, Washington, D. C., Malcolm L. Tanner, Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

In an action for a Federal income tax refund brought by the appellant taxpayers against the District Director of Internal Revenue, the district court directed a verdict for the Government. F. R. Daugette was engaged in the construction and building business. Out of this business arose the transactions which give rise to this controversy. His wife, Mary E. Daugette, was a plaintiff in the district court and is an appellant here

only because she and her husband filed joint tax returns for the years involved.

In 1947 Daugette and others organized Larkway Gardens Corporation for the purpose of acquiring land and having apartment buildings erected on it under the National Housing Act as amended 12 U.S.C.A. § 1701 et seq. Its charter provided for the issuance of common stock of five classes designated as "A", "B", "C", "D" and "E". 97,285 shares of the Class E stock of the par value of one dollar per share were authorized and it was provided the amount of capital with which the corporation should commence business was $146,185. The charter provided that Daugette should receive all the Class E stock. The subscriptions to the stock of Larkway Gardens, forming an exhibit to its corporate charter, recited that all subscriptions were "to be paid in cash, or real property, or services, rendered or to be rendered." Daugette agreed to construct the apartment units for Larkway Gardens. He entered into two contracts. One of these was a lump-sum contract on an F.H.A. printed form. By it Daugette agreed to do the work for $1,445,413, and in addition thereto as a fee the 97,285 shares of Class E stock of the par value of a dollar a share. On the basis of construction costs of $1,445,-413, a builder's fee of $97,285, and an architect's fee of $37,302, aggregating $1,-580,000, an F.H.A. insured mortgage in the latter amount was given by the First National Bank of Birmingham. The total amount of the loan as finally made was $1,595,000. At or about the same time as the making of the construction contract on the F.H.A. form, the other construction agreement was executed. By it Daugette agreed with Larkway Gardens to do the work at cost plus a fixed fee of $34,000. The agreement recited that any difference between the F. H.A. loan and the cost, builder's fee and expense should be paid to the stockholders of Larkway Gardens. There was introduced in evidence an undated letter of Daugette to Larkway Gardens saying that he would "surrender, transfer and assign" the Class E stock to the corporation on demand. In October of 1948, the year after the stock was issued to Daugette, the certificate was surrendered "for cancellation and reissuance". The Class E stock was reissued to the holders of the Class A stock pro rata. There was testimony that the Class E stock was to be surrendered for the benefit of the Class A stock when the project had been completed and the $34,000 had been paid. The president of Larkway Gardens testified that the Class E common stock "was issued according to the set-up of F.H.A. to complete the equity in the corporation in the name of Daugette". The president of Larkway Gardens was unable to recall that F.H.A. was informed of the agreement to sell or surrender the stock to the company for a dollar.

The taxpayer, F. R. Daugette, entered into another such deal with a corporation of the name of South Park, Inc. This corporation's books listed a liability of $25,000 for 250 shares of its Class B $100 par stock and showed this stock as being issued to Daugette in 1949. A certificate for this stock was completed but remained in the stock book.

The Internal Revenue Agent who examined Daugette's Federal income tax returns for 1947, 1948 and 1949 proposed substantial deficiencies of tax and negligence penalties. By far the greater part of the proposed deficiencies resulted from the inclusion as income of the Larkway Gardens Class E stock in 1947, and the South Park Class B stock in 1949, at the par value of these shares. Following the issuance of the so-called "thirty-day letter" conferences were had by Daugette and his attorney and accountant with representatives of the Internal Revenue Services. The contentions of Daugette and those of the Commissioner were stated and discussed. Proposals and counterproposals were made. A settlement was reached. Under the terms of the settlement the Larkway Class E stock was valued at twenty cents per share instead of a dollar per share as proposed, the South Park Class B stock was to be valued at $10 per share rather than $100 per share as proposed, the negligence penalties were to be eliminated, and some other issues were conceded by Daugette to the

Commissioner. For each of the disputed years Daugette filed an "Offer of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment" on Treasury Form 870–AD. By these instruments Daugette offered to accept as correct assessments in the amount there set forth which were the same as had been determined by the settlement. In these forms it was provided:

"This offer is subject to acceptance by or on behalf of the Commissioner of Internal Revenue. It shall take effect as a waiver of restrictions on the date it is accepted. Unless and until it is accepted, it shall have no force or effect.

"If this proposal is accepted by or on behalf of the Commissioner, the case shall not be reopened nor shall any claim for refund be filed or prosecuted for the year(s) above stated (other than for the amounts of the overassessments shown above), in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, or of an important mistake in mathematical calculations; and the taxpayer also agrees: (1) To make payment of the above deficiency, together with interest, as provided by law, promptly upon receipt of notice and demand from the District Director of Internal Revenue, and not to file an offer in compromise respecting such liability; and (2) upon request of the Commissioner to execute at any time a final closing agreement as to the tax liability, on the foregoing basis, for said year(s) under the provisions of section 3760 of the Internal Revenue Code. [1939] [26 U.S.C.A. § 3760]"

At the bottom of these forms is a note which reads:

"Note.—The execution and filing of this offer will expedite the adjustment of your tax liability. It is not, however, a final closing agreement under section 3760 of the Internal Revenue Code nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax."

The offers were accepted for the Commissioner by the Associate Chief of the Appellate Division of the Internal Revenue Service at Birmingham. The assessments were made in the amounts specified in the offers and payment was made by Daugette. By waivers previously executed the period of limitations for the assessment of the tax had been extended to June 30, 1955. On September 12, 1955, Daugette filed claims for refunds asserting that the Larkway Gardens Class E stock was not additional compensation and had no value and that the South Park Class B stock had no value and was never issued to him. Suits for refund were commenced in March of 1956. The Director asserted that the Commissioner had relied to his detriment upon the offers and that Daugette was estopped to assert the claims which he attempted to put forward. The court directed a verdict for the defendant Director sustaining his defense of estoppel, and from an adverse judgment Daugette has appealed.

■ Before us the appellants urge that equitable estoppel was not a defense which the Government could assert; that if such defense could have been raised it should have been submitted to the jury; that the Revenue Agent had been guilty of malfeasance in procuring the execution of the offers and the right to reopen on the ground of malfeasance should have been submitted to the jury; and that the undisputed evidence required a finding that the stocks had no value and hence a verdict for Daugette should have been directed.

The appellants lean heavily upon Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 131, 73 L.Ed. 379, and from the opinion there they quote the following:

"We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner

and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in the particular mode, it includes the negative of any other mode."

In the Botany Worsted Mills case we also find this language:

"And, without determining whether such an agreement, though not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel, it suffices to say that here the findings disclosed no adequate ground for any claim of estoppel by the United States."

Thus the Botany Worsted Mills case does not prevent the United States from successfully interposing the doctrine of equitable estoppel against the repudiation by a taxpayer of his representations in an income tax matter. See R. H. Stearns Co. of Boston, Mass. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647. When, following the settlement, the offers were submitted the statute of limitations had not run against the Government. When the claims for refund were filed and the suit was commenced the statute had run. The Government, relying upon the representations that no refund would be claimed and no suit to recover would be brought, lost its right to assess deficiencies.

The applicable principle has been thus stated:

"Compromises are a matter of contract by which the status of parties is changed; and the principles of estoppel have application in connection therewith. Where a taxpayer receives and retains the benefits flowing to it from a compromise of its tax liability, the taxpayer after the statutory period for the collection of the tax has expired, is estopped from repudiating such part thereof as it contends to have been less favorable to it than the facts or the law warranted." 9 Mertens, Law of Federal Income Taxation 472, 473, § 52.20.

The Court of Claims, in a case with facts similar to the one before us, said:

"At the time the agreement in this case was executed the statute had not run on the collection of further deficiencies, but when the claims for refund were filed the statute had run. It would obviously be inequitable to allow the plaintiff to renounce the agreement when the Commissioner cannot be placed in the same position he was when the agreement was executed. A clear case for the application of the doctrine of equitable estoppel exists and should be applied." Guggenheim v. United States, 77 F.Supp. 186, 196, 111 Ct. Cl. 165, certiorari denied 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441, rehearing denied 336 U.S. 911, 69 S. Ct. 513, 93 L.Ed. 1075. See also Rubel Corporation v. Rasquin, D.C. E.D.N.Y.1942, 43 F.Supp. 111, affirmed 2 Cir., 132 F.2d 640, Schneider v. Kelm, D.C.D.Minn.1956, 137 F.Supp. 871, affirmed 8 Cir., 237 F. 2d 721. Cf. Walker v. Alamo Foods Co., 5 Cir., 1927, 16 F.2d 694, certiorari denied 274 U.S. 741, 47 S.Ct. 587, 71 L.Ed. 1320; Lucas v. Hunt, 5 Cir., 1930, 45 F.2d 781.

In Joyce v. Gentsch, 6 Cir., 1944, 141 F.2d 891, cited by appellants the form there used had a provision expressly reserving the right to assess a further deficiency, a clause not in the form signed by the appellant. This factual difference distinguishes the Joyce case from the one before us. The opinion in Bennett v. United States, 7 Cir., 1956, 231 F.2d 465, also relied upon by appellants, contains too little factual statement to permit comparison with the case we decide and hence we cannot definitely say whether it is opposed to the view we take. It cites and follows Botany Worsted Mills v. United States, supra, and refers to no

other precedent or authority so we assume that its facts brought it under the rule announced in that case rather than under an exception to it.

■ The appellants would have us say that, if the equitable estoppel doctrine would otherwise apply, it cannot be invoked by the Government because of "unclean hands", and that malfeasance of the Government agents provided a basis for asserting a claim for refund. The unclean hands and malfeasance contentions are founded upon the assertion that the Larkway Gardens and South Park stock had no value and that the Government agents, knowing it had no value, gave Daugette a Hobson's Choice of paying the amounts demanded or being bankrupted by the loss of credit which would follow a deficiency assessment of the amount the Government proposed. The Board of Tax Appeals, now known as the Tax Court, was created to provide for tax determinations prior to payment. Newsom v. Commissioner, 22 T.C. 225. The appellants, quoting from R. H. Stearns Co. of Boston, Mass. v. United States, supra, remind us of "the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." With such doctrine we are in full accord upon principle as well as upon precedent and from such doctrine stems the rule that guides us in our consideration of this appeal. If the appellants are to prevail it must appear from the evidence that the stock had no value.

There was a representation to the Federal Housing Administration by Daugette and his associates in promoting the Larkway Gardens project that he had subscribed for Larkway Gardens stock of the par value of $97,285. The corporation showed the stock as a liability at its par value and its balance sheet showed offsetting assets to balance. Whether the issuance of the stock pursuant to one of the two construction contracts as a builder's fee was as a device designed, as appellants contend, as nothing but window dressing required by F.H.A. or whether there was some less laudable

purpose we need not decide. It is enough for us to say that the Government's agents were justified from these and other facts before them in believing that the stock had substantial value, and it is not made to appear that they had any different belief. The same is true as to the South Park stock. The fact that the executed certificate was not taken from the stock book does not show that the stock was unissued. The records of the company showed it as outstanding.

Unless those representing the Government had no reasonable ground for believing that the stock had substantial value, their bad faith is not shown. If they had somewhat mistaken ideas as to the amount of the value, there might be some ground for questioning their good judgment but nothing in the case, in our opinion, justifies the questioning of their good faith.

The case here is no stronger for the appellants than in Baldwin v. Higgins, D. C.S.D.N.Y.1937, 19 A.F.T.R. 1341, affirmed 2 Cir., 100 F.2d 405. It was said there and can be said here, "Furthermore it would seem unconscionable and inequitable to permit the plaintiff to sustain a recovery based on his own broken promises." The judgment is

Affirmed.

RIVES, Circuit Judge (dissenting).

The holding in this case is, I think, contrary to the legislative policy that there can be no compromise of a tax claim by the Commissioner of Internal Revenue unless assented to by the Secretary of the Treasury. Sections 3760 and 3761, Internal Revenue Code of 1939, 26 U.S.C.A. §§ 3760, 3761; Sections 7121 and 7122 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 7121, 7122; Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 73 L.Ed. 379. The Commissioner or his representative should not be permitted by indirection to usurp the functions which Congress has vested in the Secretary or his delegate. To allow that to be accomplished, first by tacit compliance of the parties with an agreement of compromise not approved

**758**

by the Secretary and then by the device or theory that the taxpayer is estopped to deny the compromise or to file or prosecute a claim for refund contrary to his promise which had not been accepted by the Secretary, and hence was not legally binding, seems to me wholly impermissible.

No misrepresentation as to the value of the stock in question was made by the taxpayer or relied on by the Government. The only misrepresentation made by the taxpayer was his promise not to file or prosecute a claim for refund. Assuming that that was a misrepresentation of an existing fact, it was not a fact on which the Commissioner had a right to rely because he knew that the taxpayer's promise had not been accepted by the Secretary and was not legally binding.

Suggestions have been made that it is necessary or desirable to relax the requirements of the statute,[1] but that is a matter for the consideration of Congress,[2] and administrative officials should not receive the approval of the courts for practices and policies which have the effect of defeating the clearly expressed will of Congress.

There is hardly any subject connected with our Government more necessary to be strictly limited, regulated and safeguarded than the authority to compromise tax claims. Congress is the only constitutional body which can delegate that authority. The statute is, of course, not subject to change by the administrative authorities or by the courts and it should not, I submit, be subjected to a process of administrative and judicial erosion. I therefore respectfully dissent.

---

1. "There are several thousand cases each year in which there are proposed deficiencies and which are suitable material for a formal closing agreement such as will preclude the reopening of the question of tax liability under § 3760 of the Internal Revenue Code, and there are numerous cases in which a final compromise agreement under § 3761 would be the ideal way of closing the matter, but the administrative burden placed on the Secretary and Undersecretary of the Treasury by these statutes makes it impossible for them to handle more than a small proportion of the cases and the remainder must be closed by agents not authorized by law to enter into binding agreements. The Commissioner has attempted to devise an informal type of agreement which will be binding on both parties and end controversies, but without success. See Dean Griswold's article in 57 Harv.L.Rev. 912." Annotation 11 A.L.R.2d 903, 913. Many cases are collected in that annotation and the supplement service thereto and in 9 Mertens Law of Federal Income Taxation, Chap. 52.

2. The sections were materially changed when brought forward into the 1954 Internal Revenue Code.