United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 16, 2003**

Charles R. Fulbruge III
Clerk

Revised May 28, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 02-20640

---

FRANK W SMITH; JANICE M SMITH

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA

Defendant - Appellee

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before KING, Chief Judge, and DAVIS, Circuit Judge, and VANCE, District Judge.[*]

PER CURIAM:

Plaintiffs-Appellants Frank and Janice Smith appeal the district court's order granting the Defendant-Appellee United States's motion for summary judgment and denying their motion for summary judgment.  We affirm in part, reverse in part, and remand.

## I.   FACTUAL AND PROCEDURAL HISTORY

**A.   Facts**

This case centers on whether Frank and Janice Smith ("the

---

[*] United States District Judge Sarah S. Vance of the Eastern District of Louisiana, sitting by designation.

Smiths") are subject to penalties and interest due to their underpayment of income taxes for tax years 1983 and 1984. The parties agree on the following facts.

The Smiths were limited partners in Barrister Equipment Associates Series 166 ("Barrister 166"), a publishing business. Barrister 166 was one of 124 similar Barrister partnerships. In 1983 and 1984, Barrister 166 reported ordinary losses. For 1983 and 1984, the Smiths claimed a portion of the Barrister 166 losses and a portion of Barrister 166's bases in property to receive a tax credit.[2]

The Internal Revenue Service ("IRS") began investigating the Barrister partnerships. Though the statute of limitations for assessing 1983 and 1984 taxes ran in 1987 and 1988, a Barrister 166 representative agreed to extend the statutes of limitations. In 1989, the IRS sent a "Notice of Final Partnership Administrative Adjustment," informing Barrister 166 that it was disallowing its partnership losses and bases in property subject to investment tax credit ("ITC") for 1983 and 1984.

Several partners in the Barrister partnerships, including Barrister 166, filed petitions in United States Tax Court to contest the disallowances. The Smiths were parties to the

_____

[2]    The Smiths' claimed shares of the ordinary losses were $20,955 and $27,108 and their claimed shares of the bases were $465,005 and $174,615, for 1983 and 1984, respectively.

2

Barrister 166 Tax Court proceedings.[3]  The Barrister 115 case was tried as a test case.  In 1995, the Tax Court ruled that the IRS correctly disallowed Barrister 115's 1983 and 1984 losses and bases in investment tax credit property.  This decision was not appealed.  The Tax Court then entered agreed decisions in the other Barrister cases, including Barrister 166, disallowing all losses and bases in property subject to the ITC.

On February 22, 1996, the IRS sent the Smiths a letter indicating the tax, penalties, and interest due as a result of the Tax Court's decision.  The letter indicated that the IRS used the increased rate of interest provided for in 26 U.S.C. § 6621(c)[4] for substantial underpayments attributable to tax-motivated transactions.  As for the amount of penalties due, the letter stated:

> Please note that there are two penalty reports enclosed reflecting both the Government's settlement position and litigating position being proposed for all Barrister investors.  We ask that you sign the penalty report for the settlement position as this would provide both you and the Government with a fair method of resolving this matter.  If you choose not to [accept] the settlement position or if we do not hear from you within 30 days from the date of this letter, we will have no alternative other than to issue a

---

[3]    These proceedings took place pursuant to the Tax Equity and Fiscal Responsibility Act ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324 (1982), which allows litigation at the partnership (rather than individual) level.  See Alexander v. United States, 44 F.3d 328, 330 (5th Cir. 1995) (explaining TEFRA's distinction between partnership and nonpartnership items).

[4]    We use the 1984 version of the United States Code because the 1983 and 1984 tax years are at issue in this case.  All citations to a specific section are to Title 26 of the United States Code unless otherwise stated.

Statutory Notice of Deficiency to you asserting the Government's litigating position.[5]

The settlement and litigation penalty amounts were set forth on four Forms 870, which are titled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment."  Form 870 states:

> I consent to the immediate assessment and collection of any deficiencies (increases in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown above, plus any interest provided by law.  I understand that by signing this waiver, I will not be able to contest these years in the United States Tax Court, unless additional deficiencies are determined for these years.

The IRS's instruction accompanying Form 870 states:

> Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled.  It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.
> . . .
> If you later file a claim and the Service disallows it, you may file suit for refund in a district court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.[6]

The Smiths signed the two "settlement position" forms and

---

[5]   The "settlement position" form listed 26 U.S.C. § 6659 valuation penalties of $3,720 and $1,397 for 1983 and 1984, respectively.  The "litigation position" form listed § 6653(a)(1) negligence penalties of $2,384 and $1,376 for 1983 and 1984; § 6653(a)(2) negligence penalties in amounts to be determined; and § 6661 substantial understatement penalties of $11,920 and $6,811 for 1983 and 1984.

[6]   The Smiths did not receive a copy of the Form 870 instructions with the IRS's February 22 letter.  The attorney for the United States acknowledged at oral argument, though, that a tax attorney who received a Form 870 would expect the instructions to apply.

returned them to the IRS on March 20, 1996. The letter the Smiths' attorney sent with the forms stated:

> In accordance with your solicitation, Mr. and Mrs. Smith have agreed to waive the restrictions on assessment and collection relative to the proposed penalty under I.R.C. Sec. 6659 on the understanding that by entering into this waiver, the Internal Revenue Service will not issue a notice of deficiency for additional penalties.
> . . .
> Although my clients have agreed to the Forms 870, we remain unclear as to certain aspects of this case and are requesting further documentation from you. . . . [W]e do not believe that the increased interest rate under Code Sec. 6621(c) should apply nor that there is actually any basis in the decision for the assertion of any penalties in this case. If you are in possession of any documentation that indicates that those penalties are appropriate, I would appreciate your return of that documentation by return mail.
> My client[s] recognize[] that, notwithstanding our continuing concerns, under the terms of the Forms 870, the Government may proceed with the assessment of the penalt[ies] and interest thereon set out in the Forms 870 and that they will not have an opportunity to file a petition with the Tax Court to contest th[ose] penalt[ies].

On April 2, 1996, the IRS, unaware that the Smiths had sent the signed forms, issued the Smiths a notice of deficiency for the 1983 and 1984 tax years, asserting the penalties referenced in the "litigation position" forms. On April 15, the Smiths' attorney sent a letter to the IRS referencing the Smiths' March 20 letter and asking the IRS to withdraw the deficiency notices. The IRS responded with a letter on May 13 stating it had not yet received the Smiths' March 20 letter but that the "settlement position" forms the Smiths signed would be processed and the deficiency notices would not apply.

5

The Smiths paid the assessments due according to the "settlement position" Forms 870 and filed refund claims with the IRS. Once the IRS disallowed the Smiths' claims, the Smiths filed a refund suit in federal district court.

## B. Procedural History

The Smiths filed suit in federal district court to recover federal income tax, penalties, and interest they paid for the tax years 1983 and 1984. The Smiths argued that: (1) the statute of limitations barred the IRS's collection of taxes, penalties, and interest; (2) the Smiths are not liable for § 6659 valuation overstatement penalties; (3) the Smiths are not liable for § 6621(c) interest; (4) the IRS incorrectly calculated the interest due under Avon Products, Inc. v. United States, 588 F.2d 342 (2d Cir. 1978); and (5) the IRS cannot make investment tax credit adjustments because it did not send the Smiths a statutory notice of deficiency as § 6230(a)(2)(A)(i) requires.

Both the Smiths and the United States moved for summary judgment. The United States argued that: (1) the Smiths waived the statute of limitations; (2) the IRS and the Smiths had reached an informal settlement agreement that made the Smiths liable for the § 6659 penalties and § 6621(c) interest; (3) the interest was correctly calculated because Avon Products does not apply; and (4) a statutory notice of deficiency was not required because the IRS's disallowance was a computational adjustment pursuant to the Tax Court's decision.

In their motion for summary judgment, the Smiths abandoned

6

several of their claims and argued only that: (1) they had not reached a settlement with the IRS; and (2) they should not be liable for § 6659 penalties and § 6621(c) interest on the merits.

The district court granted the United States's motion for summary judgment and denied the Smiths' motion for summary judgment. The district court found that the Smiths conceded several issues so that the only issues remaining were whether the Smiths were liable for penalties and interest under §§ 6659 and 6621(c). The district court then found that the Smiths settled their liability for § 6659 penalties. The district court rejected the Smiths' argument that the Form 870 represented only a waiver of their right to contest penalties in Tax Court and held that the Smiths also waived their right to file a refund action. The district court then found that imposition of § 6621(c) penalty interest was warranted because the Smiths agreed to liability for § 6659 valuation overstatement penalties, and a valuation overstatement is by definition a tax-motivated transaction.

The Smiths appealed. They now argue that: (1) the district court erred in finding that the Smiths settled with the IRS on § 6659 penalties and, on the merits, § 6659 penalties are inappropriate; (2) the district court erred in finding that § 6621(c) interest is due, and, on the merits, § 6621(c) interest is inappropriate; (3) the district court erred in finding they had conceded two of their other three arguments, and that, on the merits, the IRS incorrectly calculated interest under Avon

7

Products and the IRS failed to issue a notice of deficiency under 26 U.S.C. § 6320(a)(2)(A)(i).

## II.   STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standards as the district court.  Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir.), cert. denied, 534 U.S. 951 (2001).  Summary judgment should be granted if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  In determining if there is a genuine issue of material fact, this court reviews the evidence in the light most favorable to the non-moving party.  Daniels, 246 F.3d at 502.

Further, though the burden of proof is generally on a taxpayer in a refund action, e.g., Smothers v. United States, 642 F.2d 894, 901 n.17 (5th Cir. Unit A April 1981), the burden of proof on the issue of equitable estoppel is on the party asserting estoppel, e.g., Kennedy v. United States, 965 F.2d 413, 417 (7th Cir. 1992).  The district court's interpretation of a settlement agreement between the IRS and a taxpayer is an issue of law we review de novo.  Estate of Kokernot v. Comm'r of Internal Revenue, 112 F.3d 1290, 1293-94 (5th Cir. 1997).

## III.   DISCUSSION

### A.   26 U.S.C. § 6659 Penalties

The Smiths argue that they should not be estopped from challenging the § 6659 penalties assessed against them because the Forms 870 they signed were not agreements to settle and

8

reserved their right to contest the penalties in a refund action. The Smiths point to the specific language on the form, which states that the form only waives the right to contest the assessment in Tax Court, and to the instructions, which state that the taxpayer may later file a refund suit. The Smiths also assert that no court has interpreted a Form 870, without more, as a final settlement of tax liability. Assuming they are not estopped, the Smiths urge this court to hold that there is no basis for § 6659 penalties because the Tax Court did not make a finding that the disallowance was "attributable to" a valuation overstatement.

The United States argues that the Smiths should be estopped because the IRS clearly manifested an intent to reach a final settlement with the Smiths, the Smiths signed the "settlement position" Forms 870 intending to settle the claims, and the IRS relied to its detriment on the signed forms because it allowed the statute of limitations on assessing higher penalties to run. Further, the IRS argues that if the Smiths are not estopped, the panel should remand this case to the district court rather than addressing whether § 6659 penalties are appropriate on the merits.

The district court found that the Smiths agreed to settle with the IRS when they signed and returned the Forms 870. The district court rejected the Smiths' argument that the form was merely a waiver of the Smiths' right to contest the penalty in Tax Court and instead found it was "part of an overall settlement

9

position which, if signed, would resolve the matter between the Smiths and the United States." The district court also noted that the Smiths' conduct after signing the forms indicates that they meant to settle because when the IRS erroneously issued a deficiency notice listing additional penalties, the Smiths quickly responded with a letter seeking to enforce the terms of their agreement with the IRS.

In this case, though there was an informal settlement, it was not as broad as the IRS claims. The Smiths agreed to waive their right to contest the penalties before payment in Tax Court, but they did not agree to waive their right to contest the penalties after payment in a refund action in district court.

Initially, we review our law on when and how informal agreements between the IRS and a taxpayer are enforceable. The United States Code contains formal settlement procedures for the IRS to use in settling a taxpayer's tax liability. See Gen. Split Corp. v. United States, 500 F.2d 998, 1000-01 (7th Cir. 1974) ("Under 26 U.S.C. § 7121 the Secretary or his delegate is authorized to enter into a closing agreement regarding the tax liability of any person which, when approved, is final and conclusive. Under 26 U.S.C. § 7122 the Secretary or his delegate is authorized to compromise any civil or criminal tax case where there is doubt as to liability and/or collectibility.") (citations omitted). Because these formal procedures can be quite cumbersome, the IRS often enters into informal settlement agreements with taxpayers. See id. If the IRS does not use a

10

formal settlement procedure, but instead engages in an informal settlement, the informal settlement agreement is not, in itself, enforceable.  See Botany Worsted Mills v. United States, 278 U.S. 282, 288-89 (1929) ("We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised . . . and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau.").[7]  But, though an informal settlement agreement is not itself enforceable, several circuits, including this one, have enforced such agreements using principles of equitable estoppel.  See Daugette v. Patterson, 250 F.2d 753, 755-57 (5th Cir. 1957); see also, e.g., Ihnen v. United States, 272 F.3d 577, 579-81 (8th Cir. 2001), cert. denied, 123 S. Ct. 114 (2002); Aronsohn v. Comm'r of Internal Revenue, 988 F.2d 454, 456-57 (3d Cir. 1993); Union Pac. R.R. Co. v. United States, 847 F.2d 1567, 1570-73 (Fed. Cir. 1988); Gen. Split Corp., 500 F.2d at 1002-04.

In this circuit, a taxpayer may be estopped from filing a refund action if the taxpayer settles with the IRS before the statute of limitations runs, makes a representation that he will not file a refund action as part of the settlement, and then files a refund action once the statute of limitations has run and the IRS can no longer assess deficiencies related to the

_____

[7]     In Botany Worsted Mills, the Supreme Court left open the question of whether an informal settlement agreement could be enforced using estoppel.  See 278 U.S. at 289.

11

settlement.  See Daugette, 250 F.2d at 756.  Put another way, the taxpayer is estopped when he misrepresents that he will not file a refund action and the IRS reasonably relies on this misrepresentation by allowing the statute of limitations to run. It is undisputed that the statute of limitations on § 6659 penalties and § 6621(c) interest ran after the Smiths executed the Forms 870.  Thus, the key question in this case is whether the Smiths informally settled their liability with the IRS and agreed, as a part of that settlement, to give up their right to file a refund action.

Turning to the facts of this case, we find that the Smiths did not agree to give up their right to file a post-payment refund action.  First, we consider the nature of a Form 870. After a partnership-level Tax Court proceeding, the IRS generally may not assess nonpartnership items, such as penalties, without first providing a statutory notice of deficiency.  See 26 U.S.C. §§ 6212, 6213 (1982 & Supp. 1984); Maxwell v. Comm'r of Internal Revenue, 87 T.C. 783, 787-88 (T.C. 1986).  Once the IRS issues a notice of deficiency, a taxpayer has 90 days to file suit in Tax Court.  See 26 U.S.C. § 6213(a).  Form 870 is the IRS form used to waive restrictions such as the statutory notice requirement. Form 870 is generally used when a taxpayer is willing to waive his right to proceed in Tax Court before paying the tax or penalties due in order to expedite the collection process.  See Phila. & Reading Corp. v. United States, 944 F.2d 1063, 1067 (3d Cir. 1991).  The taxpayer benefits because his waiver stops

12

interest from accruing, and the IRS benefits because it can immediately assess and collect the amount due.  See id.

We have distinguished the Form 870 from other forms the IRS could use to settle a taxpayer's liability.  By its terms, Form 870 is only an offer to waive the right to file a pre-payment action in Tax Court.  Forms 870-L and 870-L(AD), on the other hand, are forms memorializing "agreements," where the taxpayer is explicitly barred from seeking a refund.  Like Form 870, Form 870-AD is an offer to waive restrictions on collection and assessment, but it, too, is distinguishable from Form 870.  Unlike Form 870, Form 870-AD must be signed by both the taxpayer and the IRS and explicitly states that the case is closed.  Thus, unlike Forms 870-AD, 870-L, and 870-L(AD), Form 870 does not contain any statements that there is a final agreement or that the taxpayer is prohibited from filing a refund action.

We recognized that Form 870 is markedly different from Form 870-AD in Daugette v. Patterson.  See 250 F.2d at 755-57.  In Daugette, we found estoppel against the taxpayer because Form 870-AD expressly bars the taxpayer from filing a refund action.  See id.  Further, other circuits have distinguished Form 870 from Form 870-AD, finding that while Form 870-AD purports to be final, Form 870 does not.  See, e.g., Elbo Coals, Inc. v. United States, 763 F.2d 818, 820-21 (6th Cir. 1985); see also Daugette, 250 F.2d at 756-57 (distinguishing Joyce v. Gentsch, 141 F.2d 891 (6th Cir. 1944), on the basis that Form 870 does not purport to be a final settlement that precludes assertion of further

13

deficiencies).

In this case, there was an agreement between the Smiths and the IRS.[8]  The IRS correctly notes that its letter of February 22 and the accompanying (unsigned) Form 870 were an offer for a settlement for the tax years 1983 and 1984.  The Smiths accepted this offer by signing the Form 870.  As consideration, the Smiths gave up their right to file a pre-payment action in Tax Court and the IRS gave up its right to assess higher penalties.

The scope of the agreement, though, is not as broad as the IRS asserts.  It was reasonable for the Smiths to believe that Form 870's effect was limited to its express terms.  The instructions to Form 870 make it clear that the taxpayer is waiving only his right to contest the penalties in Tax Court; the form and instructions say nothing about precluding a refund action.  After signing the Form 870, the Smiths sent it back to the IRS with a letter from their attorney, stating the Smiths waived only "the restrictions on assessment and collection relative to the proposed penalty under I.R.C. Sec. 6659" so that the Smiths "will not have an opportunity to file a petition with the Tax Court to contest that penalty."  Further, in this letter, the Smiths' attorney stated that the Smiths dispute "that there

---

[8]     Whether there is an agreement is governed by the federal common law of contracts, which uses "the core principles of the common law of contract[s] that are in force in most states."  See United States v. Nat'l Steel Corp., 75 F.3d 1146, 1150 (7th Cir. 1996); see also Estate of Ray v. Comm'r of Internal Revenue, 112 F.3d 194, 196 (5th Cir. 1997) (applying "general contract principles" to determine when an agreement based on a Form 870-L(AD) was formed).

is actually any basis in the decision for the assertion of any penalties in this case" and asked for additional information about § 6621(c) interest, which suggests that the Smiths did not believe the case closed.  Later, in their April 15 letter to the IRS, the Smiths characterized their agreement as such: "if [the Smiths] executed a Form 870 agreeing to waive the restrictions on assessment and collection on a stated 6659 penalty . . . no notice of deficiency for additional penalties would be issued." Further, Mr. Smith testified in his deposition that he did not believe signing the "settlement position" Forms 870 waived his right to later file a refund action.

The IRS argues that the Smiths must have viewed the Forms 870 as proposing a final settlement for two main reasons.  First, the IRS points out that it asked the Smiths to sign the "settlement position" Form 870 as "a fair method of resolving th[e] matter."  This language, without more, does not make it clear that the IRS meant for the Smiths to give up their rights to both a prepayment action and a refund action.  Second, the IRS notes that when the IRS assessed a notice of deficiency, the Smiths objected.  But the Smiths' objection does not suggest that they gave up their right to file a refund action.  Rather, this objection simply showed that the Smiths wanted the IRS to assess the agreed deficiencies because that assessment would stop interest from accruing on the deficiencies.  See Phila. & Reading Corp., 944 F.2d at 1067 ("[A] taxpayer that forgoes review in Tax Court can, by executing a binding Form 870, suspend interest on

15

tax due from the thirtieth day following the filing of the waiver through the time that the IRS issues a notice and demand for payment.") (citing 26 U.S.C. § 6601).  Because there was no meeting of the minds between the Smiths and the IRS whereby the Smiths agreed to waive their right to file a refund action, the Smiths are not estopped from filing this refund action.

Because we find that the Smiths are not estopped from seeking a refund on the undisputed facts, we remand to the district court to address the merits of the Smiths' refund action in the first instance.

### B.    26 U.S.C. § 6621(c) Interest

Next, we consider whether the district court improperly assessed § 6621(c) interest against the Smiths.

The district court determined that the Smiths must pay § 6621(c) penalty interest.  The district court reasoned that, according to § 6621(c), interest is imposed when there is substantial underpayment attributable to a tax-motivated transaction.  The statute defines a "tax-motivated transaction" as, <u>inter alia</u>, "any valuation overstatement (within the meaning of section 6659(c))."  Because the Smiths agreed to § 6659 penalties, the district court found, they conceded that they engaged in tax-motivated transactions and § 6621(c) interest was thus appropriate.

Because we hold that the Smiths are not estopped from challenging the § 6659 penalties in this refund action and we remand for a determination of whether § 6659 penalties are

16

warranted, we remand on the issue of § 6621(c) interest as well.

**C.   Waiver of the Smiths' Remaining Arguments**

Finally, we consider whether the district court correctly held that the Smiths conceded all other bases for recovery contained in their complaint.

The Smiths argue that they did not actually concede the two arguments that they expressly conceded in their motion for summary judgment.  The Smiths reason that, because the United States's motion for summary judgment, filed the same day as the Smiths' motion for summary judgment, briefed these issues, the United States could not have believed the issues were conceded. Then, on the merits, the Smiths argue that the IRS erroneously computed the interest on the Smiths' 1983 and 1984 tax liability according to Avon Products, Inc. v. United States, 588 F.2d 342 (2d Cir. 1978), because the IRS did not account for an overpayment in computing interest on the Smiths' 1984 tax liability.  The Smiths further argue that the IRS's investment tax credit-related assessment was invalid because the IRS failed to issue a statutory notice of deficiency as required by 26 U.S.C. § 6230(a)(2)(A)(i).

The United States argues that the Smiths abandoned these arguments before the district court.  The United States points out that in their motion for summary judgment, the Smiths stated that they were limiting their claims to recovery of § 6659 penalties and § 6621(c) interest and that they conceded all other bases for recovery.  If these issues are not waived, the United

17

States asserts that the IRS did not incorrectly compute the interest due because Avon Products does not apply and that the IRS did not need to issue a statutory notice of deficiency because ITC-related assessments may be summarily assessed without a notice of deficiency.

The district court found that the Smiths conceded these arguments based on their statement in their summary judgment brief that they "conceded all other bases for recovery of their original claims, including their statute of limitations defense."

In their complaint, the Smiths made essentially five arguments. These are: (1) that they did not agree to § 6659 penalties and § 6659 penalties are unwarranted; (2) that § 6621(c) interest is unwarranted; (3) that the IRS incorrectly calculated the interest due under Avon Products; (4) that the IRS failed to issue a notice of deficiency before making ITC-related adjustments; and (5) that the statute of limitations barred the IRS's collection of tax, penalties, and interest. The Smiths now claim that arguments (3) and (4) were not waived.[9]

In their motion for summary judgment, the Smiths made two statements of concession. First, at the beginning of their motion for summary judgment, the Smiths stated:

> Frank W. Smith and Janice M. Smith move for summary judgment against the United States for refunds based on recovery of the § 6659 penalty and interest and the penalty portion of the interest charged under § 6621(c). The Smiths did not agree to and the IRS

---

[9] The Smiths do not attempt to reinvigorate their statute of limitations argument on appeal.

18

> improperly assessed the § 6659 penalty and interest related to the § 6659 penalty. The Smiths did not agree to and the IRS improperly assessed the § 6621(c) penalty.
>
> These partial refunds are all that remain in issue. The Smiths have conceded all other bases for recovery of their original claims, including their statute of limitations defense.

Later in the motion, the Smiths stated: "This motion for summary judgment addresses the only two issues remaining in this case, (i) the § 6659 valuation overstatement penalty and interest on that penalty, and (ii) the § 6621(c) penalty interest." The Smiths' motion for summary judgment makes no argument about the incorrect calculation of interest under Avon Products or the deficiency notice requirement under 26 U.S.C. § 6230(a)(2)(A)(i).[10]

In its motion for summary judgment, filed on the same day as the Smiths' motion, the United States argued all five issues. It is reasonable to assume that the United States did not realize that the Smiths conceded these issues until the Smiths filed their motion for summary judgment. But in its response to the Smiths' motion for summary judgment, the United States argued that the Smiths waived these two arguments by expressly stating that they had conceded them and that no other arguments remained.

The Smiths responded by stating, in their response to the

---

[10] Though § 6230(a)(2)(A)(i) was not enacted until 1986, it was made effective for partnership tax years beginning after September 3, 1982. See Pub. L. No. 99-514, § 1875, 100 Stat. 2085, 2896 (1986) (stating that the amendments "shall take effect as if included in the Tax Equity and Fiscal Responsibility Act of 1982").

United States's Motion for Summary Judgment, that they conceded only the statute of limitations issue. The Smiths did not explain why their unambiguous statements of concession of all but two issues did not waive these issues. Rather, they simply argued that the United States was not entitled to summary judgment on these issues on the merits.

The Smiths now contend that the two arguments were not waived and may be addressed by this court on appeal. We find that the district court correctly concluded that the arguments were waived. The Smiths expressly stated that they conceded the issues in their motion for summary judgment. This motion purported to address the only remaining issues in the case, and it did not provide any argument on the two issues the Smiths now urge. A party's concession of an issue means the issue is waived and may not be revived. See, e.g., Fehlhaber v. Fehlhaber, 681 F.2d 1015, 1030 (5th Cir. 1982). The Smiths provide no explanation of why their statements of concession apply only to the statute of limitations argument and not to the Avon Products and notice of deficiency arguments. We thus affirm this portion of the district court's ruling.

## IV. CONCLUSION

For the foregoing reasons, the district court's order granting the United States's motion for summary judgment and denying the Smiths' motion for summary judgment, is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings. Costs shall be borne by the United States.

20