# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2024

Lyle W. Cayce
Clerk

No. 23-20188

Michel Keck,

*Plaintiff—Appellant/Cross-Appellee*,

Mathew Kidman Higbee; Higbee & Associates,

*Cross-Appellees*,

*versus*

Mix Creative Learning Center, L.L.C.; Jacqueline P. Kenneally; Does 1 through 10 inclusive,

*Defendants—Appellees/Cross-Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-430

_____

Before Jones, Smith, and Ho, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Defendant–Appellee Mix Creative Learning Center is an art studio that offers art lessons to children. In 2020, Mix Creative began selling "art kits" online so students could learn at home during the pandemic. One of these kits reproduced artworks from Plaintiff–Appellant Michel Keck's Dog Art series. Keck sued Mix Creative and its proprietor for copyright and

trademark infringement and sought enhanced statutory damages for willful infringement. The district court found that the fair use defense to copyright infringement applied and granted summary judgment to Mix Creative on the copyright claim. It also granted summary judgment to Mix Creative on the trademark claim, although Mix Creative had not sought summary judgment on that claim. Following summary judgment, the district court awarded fees and costs to Mix Creative under 17 U.S.C. § 505, but it declined to hold Keck's trial counsel jointly and severally liable for the fee award under 28 U.S.C. § 1927.

We conclude that (i) the fair use defense to copyright infringement applies since Mix Creative's use was transformative and unlikely to cause harm to markets for Keck's copyrighted works; (ii) any error in the district court's *sua sponte* grant of summary judgment on the trademark claim was harmless; and (iii) the district court did not abuse its discretion in either fee ruling. The district court's judgment is AFFIRMED.

## I. Background

Michel Keck is a multi-media artist who has registered the works from her Dog Art series with the United States Copyright Office. She has also registered her name, "Michel Keck," with the United States Patent and Trademark Office.

Defendant Jacqueline Kenneally is the sole proprietor of Mix Creative Learning Center. Mix Creative is an art studio in Houston, Texas, that has offered children's art lessons since 2005. In 2020, Mix Creative began selling art kits online for at-home learning during the pandemic. These kits included printed-out PowerPoint slides featuring an artist's biography and artwork samples, along with a lesson plan and supplies for students to make their own art in the artist's style. Students also had the opportunity to join a Zoom call with Kenneally to create art under her guidance.

No. 23-20188

Keck was one of the artists whose work was featured in Mix Creative's art kits. Kenneally discovered Keck's dog-themed artwork online after searching Google images for "paintings of dogs." She decided the artwork would interest her students and copied images from the internet for the kits. The Keck-inspired kits included printed-out slides with full images of Keck's artwork (in addition to a slide with Keck's biography); supplies such as paint, paint brushes, and collage paper; and a lesson plan with a Zoom link. Only six Keck-inspired kits were purchased, for a total of $240. Two of the purchases were made by Keck herself, who thereafter sued Mix Creative and Kenneally.

When Defendants were notified of Keck's lawsuit, they immediately stopped selling the Keck-inspired kits and removed the category of art kits from Mix Creative's website.

Keck's complaint asserted copyright and trademark claims and sought enhanced statutory damages for willful infringement. After discovery, the parties filed cross-motions for summary judgment, neither of which briefed the trademark claims. At a hearing on the motions, the district court granted summary judgment to Defendants on the issue of enhanced damages, finding no evidence of willful infringement, but also granted summary judgment to Keck on all affirmative defenses apart from fair use and innocent infringement. In a written order that followed, the district court granted summary judgment to Defendants on copyright fair use as well as trademark fair use. Although neither party's motion had addressed the trademark claim, the court stated its understanding that, during the motion hearing, both parties "expressed that their arguments [on the copyright claims] also appl[ied] to Plaintiff's trademark claims."

After prevailing on summary judgment, Defendants moved for fees and costs under 17 U.S.C. § 505 (the copyright fee-shifting provision), 28

U.S.C. § 1927, Rule 26(g) of the Federal Rules of Civil Procedure, and the court's inherent power to sanction bad faith or vexatious litigants. The district court found that fee-shifting was appropriate under § 505 and awarded $102,404 in fees and $165.72 in costs against Keck and in favor of Defendants. However, the court declined to hold Keck's attorneys jointly and severally liable for the award.

On appeal, Keck contends that the district court erred by granting summary judgment to Defendants on copyright fair use and by granting summary judgment *sua sponte* without prior notice on her trademark claim. She also challenges the fee award to Defendants. Defendants cross-appeal, arguing that the district court erred by refusing to hold Keck's attorneys jointly and severally liability for fees and costs.

## II. Discussion

We address copyright fair use before turning to the trademark claim and fee award.

### A. Copyright Fair Use

The district court granted summary judgment in favor of Defendants based on the affirmative defense of copyright fair use. Summary judgment rulings are reviewed de novo by this court. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005). Keck argues that the district court erred in weighing the fair use factors, particularly the first and fourth. We disagree.

The fair use doctrine is an "equitable rule of reason which permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Stewart v. Abend*, 495 U.S. 207, 236, 110 S. Ct. 1750, 1768 (1990) (citations and internal quotation marks omitted). It is codified as an affirmative defense to copyright infringement at 17 U.S.C. § 107. The statute lists several examples

of fair use of a copyrighted work, including "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." It then lists four factors for determining "whether the use made of a work in any particular case is a fair use":

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. All four factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578, 114 S. Ct. 1164, 1171 (1994). The factors are not exclusive, however, and "[a] fair-use defense can succeed even if one or more factors favor the claimant." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 321 (5th Cir. 2022). "Courts typically give particular attention to factors one and four (the purpose and market effect of the use)." *Id.*

The district court found that the first and fourth factors favored Defendants, whereas the second and third factors favored Keck.[1] As the parties do, we focus our discussion on the first and fourth factors.

_____

[1] According to the district court, the second factor (the nature of the copyrighted work) and the third factor (the amount and substantiality of the portion used) favored Keck because her copyrighted work was expressive, not merely factual, in nature, and Mix Creative copied six complete pieces of her art from the internet. We agree with the district court's analysis of these two factors.

No. 23-20188

1.

The "central question" of the first factor, the "purpose and character of the use," is "whether the new work merely supersede[s] the objects of the original creation . . . (supplanting the original), or instead adds something new, with a further purpose or different character." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527-528, 143 S. Ct. 1258, 1274 (2023) (internal quotation marks omitted) (quoting *Campbell*, 510 U.S. at 579, 114 S. Ct. at 1171). This factor "relates to the problem of substitution—copyright's bête noire." *Id.* at 528. A use that has a purpose or character similar to that of the original copyrighted work is more likely to serve as a substitute for the original; the same is not true of a use that has a further purpose or different character. *Id.*

"A use that has a further purpose or different character is said to be 'transformative.'" *Id.* at 529, 143 S. Ct. at 1275 (quoting *Campbell*, 510 U.S. at 579, 114 S. Ct. at 1171). "'[T]ransformativeness' is a matter of degree." *Id.* The more different the purpose or character of the use is, "the more likely the first factor weighs in favor of fair use." *Id.* Yet not all transformations of an original work are "transformative" in the fair use sense. Copyright holders also have the exclusive right "to prepare derivative works" of their copyrighted material. 17 U.S.C. § 106(2). These are works "based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version . . . , or any other form in which a work may be recast, *transformed*, or adapted." *Id.* § 101 (emphasis added). To preserve the right of copyright holders to prepare derivative works, "the degree of transformation required to make 'transformative' use of an original [in the fair use sense] must go beyond that required to qualify as derivative." *Warhol*, 598 U.S. at 529, 143 S. Ct. at 1275.

No. 23-20188

An "additional 'element of the first factor'" is whether the use is commercial or nonprofit in nature. *Id.* at 531, 143 S. Ct. at 1276 (quoting *Campbell*, 510 U.S. at 584, 114 S. Ct. at 1174). Although the commercial nature of a use disfavors finding for defendants on the first factor, it is "not dispositive." *Id.* Instead, "it is to be weighed against the degree to which the use has a further purpose or different character." *Id.* The "justification for the use" is also a relevant consideration. *Id.* "In a broad sense, a use that has a distinct purpose is justified because it furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create." *Id.* A use may also be justified in a "narrower sense," when "copying is reasonably necessary to achieve the user's new purpose," as with a parody of an original work. *Id.* at 532, 143 S. Ct. at 1276.

The district court correctly found that the first factor weighed in Defendants' favor. Although Mix Creative is a commercial enterprise, its use of Keck's copyrighted works was transformative, as the art kits had an educational purpose that was significantly different from the original, decorative purpose of Keck's dog-themed artworks. Along with printed images of the artworks, the kits included lesson plans, PowerPoint slides with Keck's biographical information, and materials for students to create their own art, inspired by Keck's. As the district court observed, Mix Creative "drew on Plaintiff's art not for its inherent expressive value but for what it, accompanied by materials and instruction in art theory and history, could teach students." Mix Creative is, after all, a learning center, not a gallery or print shop. Moreover, because Mix Creative's art kits were designed and sold to inspire students to create their own art, its use of Keck's artwork was also "justified" in the broad sense mentioned above. *See id.*

Keck argues that the Supreme Court's recent decision in *Andy Warhol Foundation v. Goldsmith* shows that Mix Creative's use was in fact not transformative. We disagree. In *Warhol*, photographer Lynn Goldsmith took a

7

black and white portrait photograph of Prince in 1981 for *Newsweek* magazine, which she registered with the Copyright Office and subsequently licensed to other magazines. She alleged that the Andy Warhol Foundation infringed her copyright in 2016 by licensing Andy Warhol's silkscreen adaptation of her photograph (titled "Orange Prince") to Condé Nast for a special edition magazine following Prince's death. *Id.* at 516–19, 143 S. Ct. at 1266–69. As Keck notes, the *Warhol* Court focused on the Foundation's "specific use" of Goldsmith's photograph in analyzing whether the use was transformative, and ultimately concluded it was not. *See id.* at 526, 143 S. Ct. at 1273. But in *Warhol* the purpose of the Foundation's "specific use" was, according to the Court, "substantially the same" as the purpose of the original photograph. Both the original and the adaptation that the Foundation licensed to Condé Nast were "portraits of Prince used in magazines to illustrate stories about Prince." *Id.* at 535, 143 S. Ct. at 1278. The Foundation's "licensing of the Orange Prince image thus . . . shared the objectives [] of Goldsmith's photograph." *Id.* Not so here. As noted, the art kits had educational objectives, while the original works had aesthetic or decorative objectives. The purpose of Mix Creative's specific use thus was not "substantially the same" as that of the original works, and there was little threat that the art kits would serve as substitutes for the originals.

In arguing otherwise, Keck attempts to frame the specific use by Mix Creative as "the online, e-commerce sales of Keck's entire works." This framing oversimplifies *Warhol*'s inquiry into objectives and fails to distinguish the commercial-nature inquiry from the more nuanced inquiry into whether a secondary use has a further purpose or different character. Keck also contends that the district court's interpretation of the purpose of the art kits as educational was subjective rather than objective. *See id.* at 544, 143 S. Ct. at 1284 (stating that "the subjective intent of the user (or the subjective interpretation of a court) [does not] determine the purpose of the use"). But

there is no issue of subjective interpretation here. Purely objective considerations of Mix Creative's business model and the materials in the art kits are enough to discern their distinct, educational purpose.

The first factor favors Defendants.

2.

The fourth factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). In assessing this factor, courts look to "the amount of money that the copyright owner might lose," *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 35, 141 S. Ct. 1183, 1206 (2021), and also, "more broadly, whether widespread use of the work in the same infringing fashion 'would result in a substantially adverse impact on the potential market' for the original work and any derivative," *Bell*, 27 F.4th at 324 (quoting *Campbell*, 510 U.S. at 590, 114 S. Ct. at 1177). "This last factor is undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566, 105 S. Ct. 2218, 2233 (1985).

As the district court correctly found, the fourth factor favors Defendants. We share the district court's difficulty in imagining "how the use of Plaintiff's art for children's art lessons devalues her pieces' market worth. The widespread use of Plaintiff's art for educational lessons would likely, if anything, increase her name recognition and commercial value." This court came to a similar conclusion in *Bell v. Eagle Mountain*, 27 F.4th at 325 ("If anything, the properly attributed quotation of a short passage from *Winning Isn't Normal* might bolster interest in the book; it is free advertising."). The transformative nature of Mix Creative's use also supports a conclusion against market harm. As the *Warhol* Court observed, "A secondary use that is more different in purpose and character is less likely to usurp demand for the original work or its derivatives." 598 U.S. at 536 n.12, 143 S. Ct. at 1279

n.12; *see also Campbell*, 510 U.S. at 591, 114 S. Ct. at 1177 ("[W]hen . . . the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred.").

Keck contends that Defendants failed to adduce sufficient evidence about relevant markets to satisfy their burden of proof on this factor. This is incorrect. Kenneally's sworn declaration attests that Defendants are "not in the business of selling art works or reproductions of art by well-known artists" and that Mix Creative uses artists' works for educational purposes only. This evidence simply confirms what is obvious from Defendants' business model, that Mix Creative does not participate in the same markets as Keck.

Keck also argues that she presented evidence of harm to markets for derivatives of her works, but the proffered evidence is nothing more than "Defendants' own sales for derivative uses of Keck's artwork." This court has written that "we cannot recognize a 'theoretical market for licensing the very use at bar.'" *Bell*, 27 F.4th at 325 (quoting *Swatch Group Mgmt. Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 91 (2d Cir. 2014)). We instead consider whether there is a "'traditional, reasonable, or likely to be developed market[ ]' for licensing the kind of use at issue." *Id.* (internal citation omitted). Keck offered no evidence that such a market exists or could reasonably be expected to develop. As Defendants put it, "There is no evidence in the record that Ms. Keck has any licensees for her artwork at issue for purposes of providing interactive 'teaching tool' products for art lessons to children, or any similar products . . . ." This court found a similar argument persuasive in *Bell*. *Id.* ("Bell is unable to allege that anyone has ever purchased a license before posting the WIN Passage on social media . . . .").

Finally, Keck contends that the district court failed to consider whether hypothetical "widespread use of the work in the same infringing fashion" as that of Mix Creative would harm the relevant markets. This

argument fails, too.  Widespread use cannot have an impact on markets that do not exist and are unlikely to be developed, as is the case with derivative "teaching tool" products here, for the reasons just stated.  Keck's further contention that Mix Creative's use, if widespread, would harm the market for reproductions of her artwork defies common sense.  Kenneally, through Mix Creative, allegedly infringed Keck's copyrights by simply copying online images of Keck's artworks and printing them on paper for inclusion in the kits.  It is implausible that printing publicly available images in this manner would negatively impact the market for professional reproductions of an artist's work.

The fourth factor favors Defendants.  Accordingly, because the two most important statutory factors governing fair use favor Defendants, the district court correctly rejected Keck's copyright claim.

## B. Trademark Claim

Neither party briefed the trademark claim below, but the district court *sua sponte* granted summary judgment to Defendants after it evidently concluded from an exchange during the motion hearing that the parties agreed that their arguments on copyright fair use applied to the trademark claim as well.  Although trademark and copyright claims are governed by different standards,[2] Keck did not emphasize this in the district court but rather conceded that the trademark and copyright claims were interchangeable.  We accordingly hold that any error in the district court's *sua sponte* grant of summary judgment without notice was harmless.

---

[2] "[T]rademark fair use and copyright fair use are distinct defenses for distinct claims."  *Warner Bros. Entm't, Inc. v. X One X Productions*, 840 F.3d 971, 980 (8th Cir. 2016).

"While district courts may grant summary judgment *sua sponte* they must first give the parties 'notice and a reasonable time to respond.'" *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018) (first citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir. 1994), then quoting FED. R. CIV. P. 56(f)). This court "strictly enforce[s]" the notice requirement but also recognizes that "the harmless error doctrine applies to lack of notice required by rule 56[f]." *Id.* (citing *Leatherman*, 28 F.3d at 1397–98). Under the harmless error doctrine, an appellate court may affirm *sua sponte* dismissal without notice "if the nonmoving party admits that he has no additional evidence anyway" or if "the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact." *Id.* (citation omitted).

At the summary judgment hearing on the parties' cross-motions, the district court asked counsel for each side about the trademark claim. Counsel for Defendants responded that he had "presume[d]" that the trademark and copyright claims were one and the same because, in his understanding, the trademark was "embedded" in the copyrighted art. The court asked counsel for Keck, "Is that how you see it?" to which counsel responded, "Yes your honor." Keck's counsel then confirmed that the court did not "need to deal with something for the trademark."

The above exchange amounts to a concession by Keck that the trademark and copyright claims were interchangeable. Counsel may not now, on appeal, abandon that concession on which the district court relied. *Cf. Smith v. United States*, 328 F.3d 760, 770 (5th Cir. 2003) ("A party's concession of an issue means the issue is waived and may not be revived."). Given the concession, moreover, we conclude that any failure by the district court to expressly notify Keck that it would rule on the trademark claim in its forthcoming order was harmless. This is essentially identical to one of the situations in which this court has found harmless error in the past, *i.e.*, when "the

nonmoving party admits that he has no additional evidence anyway." *See Leatherman*, 28 F.3d at 1398.

## C. Fees

Finally, the district court awarded $102,404 in fees to Defendants under 17 U.S.C. § 505, but refused to hold Keck's counsel, Higbee & Associates, jointly and severally liable for the fee award under 28 U.S.C. § 1927. Keck argues that the district court committed several errors contravening the Supreme Court's decision in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S. Ct. 1023 (1994), in granting fees to Defendants; misapplied the factors provided by the *Fogerty* opinion, *id.* at 534 n.19, 114 S. Ct. at 1033 n.19; and failed to reduce fees for time spent on motions and issues that Keck prevailed on in the trial court. In their cross-appeal, Defendants argue that the district court erred by refusing to hold Keck's trial counsel jointly and severally liable for the fee award.

This court reviews fee awards under the deferential abuse of discretion standard. *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 725 (5th Cir. 2008). "A trial court abuses its discretion in awarding or refusing to award attorney's fees when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (citation omitted).

The district court did not abuse its discretion in awarding fees to Defendants under § 505. In this circuit, "an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588–89 (5th Cir. 2015) (citation omitted). Contrary to Keck's arguments, the language in the district court's fee order does not contradict any of the holdings of *Fogerty*, 510 U.S. 517, 114 S. Ct. 1023, nor did the district court misapply the factors listed in that opinion, which in any event are non-exclusive. And given that fair use is a complete defense to copyright

infringement, and Keck lost on fair use, the district court did not err in refusing to reduce fees for time Keck spent on non-dispositive motions and issues.

Although this issue is closer, neither did the district court abuse its discretion by refusing to hold Higbee & Associates jointly and severally liable for the fee award under 28 U.S.C. § 1927. Before imposing sanctions under § 1927, "a court must ensure that, pursuant to the plain terms of § 1927, the offending attorney's multiplication of the proceedings was both 'unreasonable' and 'vexatious'; evidence of recklessness, bad faith, or improper motive must be present." *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416–17 (5th Cir. 1994) (citations omitted). It is troubling that Keck alone will be liable for the high fees incurred by Defendants largely because of Higbee & Associates' overly aggressive litigation strategy. From our review of the record, the law firm lacked a firm evidentiary basis to pursue hundreds of thousands of dollars in statutory damages against Defendants for willful infringement. Nevertheless, we cannot say, on an abuse of discretion standard, that the district court erred by determining that there was insufficient evidence that the firm's conduct was both unreasonable and vexatious. The trial court was in the best position to assess the firm's motivation and tactics. But we warn Higbee & Associates that future conduct of this nature may well warrant sanctions, and nothing in this opinion prevents Higbee & Associates from compensating its client, if appropriate, for the fees that she is now obliged to pay Defendants.

## III. Conclusion

The judgment of the district court is AFFIRMED.